WALKER v JOHNSON & JOHNSON VISION PRODUCTS, INC

Docket No. 175013. Submitted March 13, 1996, at Detroit. Decided July 26, 1996, at 9:05 A.M. Leave to appeal sought.

Kim Walker brought an action in the Oakland Circuit Court against Johnson & Johnson Vision Products, Inc., and others, alleging that she suffered permanent injury to her right eye as the result of the use of disposal contact lenses manufactured by Johnson & Johnson. The plaintiff alleged with respect to Johnson & Johnson negligent design and manufacture of the lenses, negligent failure to warn of the dangers associated with the use of contact lenses, and breach of warranty. Johnson & Johnson moved for summary disposition on the basis that the soft extended-wear contact lenses were Class III medical devices under the Medical Device Amendments of 1976 (MDA), 21 USC 360c *et seq.*, of the Federal Food, Drug, and Cosmetic Act, 21 USC 301 *et seq.*, and, accordingly, state products liability claims were preempted by § 360k(a), 21 USC 360k(a). The court, Fred M. Mester, J., granted summary disposition for Johnson & Johnson on the basis that the court lacked subject-matter jurisdiction because of § 360k(a) and dismissed the other defendants on stipulation of the parties. The plaintiff appealed.

The Court of Appeals *held*:

Congress did not intend to preempt state court actions against the manufacturers of Class III medical devices where the claim is based on the negligent design and manufacture of the device, the negligent failure to warn of dangers associated with the use of the device, or a breach of a warranty relating to the device. Accordingly, the trial court erred in holding that it lacked subject-matter jurisdiction and in granting summary disposition for defendant Johnson & Johnson.

1. It is unclear whether Congress intended by the adoption of § 360k(a) to preempt all state products liability actions involving devices subject to the provisions of the MDA; accordingly, it is proper to look to the regulations of the Food and Drug Administration, the administrative body charged with the enforcement of the provisions of the MDA, for guidance in interpreting congressional intent and to defer to the agency's construction of the statute unless its interpretation of the statute is unreasonable.

2. The FDA in its regulations, 21 CFR 808.1(d), interprets § 360k(a) as preempting state and local requirements only where the FDA "has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements."

3. The premarket approval procedure of Class III medical devices by the FDA pursuant to § 360c(a)(1)(C), 21 USC 360c(a)(1)(C), is not a specific requirement applicable to a particular device because it applies to all Class III medical devices. Further, because the MDA was enacted to protect consumers, the MDA specifically provides that an order issued pursuant to § 460 does relieve any person from liability under state or federal law, and the MDA fails to provide a specific federal remedy, Congress could not have intended to preempt state products liability actions and thereby leave a person injured by a Class III medical device without a remedy.

4. Because the MDA provides for the labeling of medical devices with adequate directions and warnings where the dangers of a prescription device are not known to practitioners licensed to use the device and the plaintiff has alleged that the dangers of the contact lenses at issue were not well known at the time they were prescribed for her, her claim based on a failure to warn is not "different from, or in addition to" the requirements imposed under the MDA, but is rather an action to enforce those requirements. Accordingly, the claim based on the failure to warn is not preempted.

Reversed and remanded.

GRIFFIN, J., concurring in the result, stated that the matter raised in this appeal is resolved by the holding in *Medtronic, Inc v Lohr*, 518 US ___ (1996), which is controlling.

1. STATUTES — COURTS — INTENT OF CONGRESS — ADMINISTRATIVE REGULATIONS.

A court in determining the intent of Congress in passing a statute where the statute itself is silent or ambiguous regarding congressional intent may look to the regulations of the agency charged with the administration of the statute for guidance in interpreting congressional intent.

2. STATUTES — MEDICAL DEVICES — MEDICAL DEVICE AMENDMENTS OF 1976.

The purpose of the Medical Device Amendments of 1976 of the Federal Food, Drug, and Cosmetic Act was to protect consumers from unsafe medical devices (21 USC 360c *et seq.*).

3. ACTIONS — MEDICAL DEVICES — FEDERAL PREEMPTION.

Congress did not by its adoption of the Medical Device Amendments of 1976 of the Federal Food, Drug, and Cosmetic Act intend to preempt state court actions against the manufacturers of Class III medical devices where the claims are based on the negligent design and manufacture of the devices, the negligent failure to warn of dangers associated with the use of the devices, or a breach of any warranty relating to the devices (21 USC 360k[a]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Alan B. Posner*), for the plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Robert S. Krause* and *Robert W. Powell*), for the defendant.

Before: MURPHY, P.J., and GRIFFIN and E. R. POST,* JJ.

MURPHY, P.J. Plaintiff filed suit against Johnson & Johnson Vision Products, Inc.,[1] when she suffered permanent injury to her right eye after using contact lenses manufactured by defendant. The trial court found that plaintiff's claims against defendant were preempted by the Medical Device Amendments of 1976 (MDA), 21 USC 360c *et seq.*, to the Federal Food, Drug, and Cosmetic Act, 21 USC 301 *et seq.*, and granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(4) (the court lacks subject-matter jurisdiction). Plaintiff appeals. We reverse and remand for trial.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff also filed suit against Dr. Irving Adler, First Optometry Care Centers, Inc., and For Your Eyes Only, Inc. However, these defendants are not parties to this appeal because the trial court entered an order dismissing plaintiff's cause of action against them pursuant to the parties' stipulation for dismissal.

Plaintiff alleged that she developed a corneal ulcer and suffered permanent injury to her right eye after using Vistakon Acuvue, etafilcon A, hydrophilic disposable contact lenses (Acuvue contact lenses), a product manufactured by defendant. Plaintiff's second amended complaint contained claims against defendant for negligent design and manufacture of the contact lenses, negligent failure to warn of the dangers associated with the use of the contact lenses, and breach of warranty.[2] Defendant moved for summary disposition pursuant to MCR 2.116(C)(4), arguing that Acuvue contact lenses are regulated as Class III medical devices under the MDA and that plaintiff's claims against defendant were expressly preempted by § 360k(a), 21 USC 360k(a). The trial court granted defendant's motion, holding that § 360k(a) preempted plaintiff's claims.

This Court reviews de novo a trial court's grant or denial of summary disposition. *Bitar v Wakim*, 211 Mich App 617, 619; 536 NW2d 583 (1995). When reviewing a motion for summary disposition under MCR 2.116(C)(4), we must determine whether the pleadings demonstrate that the defendant was entitled to judgment as a matter of law or whether the affidavits and other proofs show that there was no genuine issue of material fact. *Bitar*, *supra*, 619-620.

The issue in this case is whether § 360k(a) preempts plaintiff's negligent design and manufacture, negligent failure to warn, and breach of implied war-

[2] Because plaintiff's complaint does not allege that defendant breached any express warranties, we will assume that plaintiff's breach of warranty claim is a claim for breach of an implied warranty of merchantability, MCL 440.2314; MSA 19.2314, or a claim for breach of an implied warranty that the contact lenses were fit for a particular purpose, MCL 440.2315; MSA 19.2315.

ranty claims against defendant. The majority of federal and state courts considering this issue have held that § 360k(a) preempts most or all state products liability claims against the manufacturer of a Class III medical device. See, e.g., *Mitchell v Collagen Corp*, 67 F3d 1268 (CA 7, 1995); *Duvall v Bristol-Myers-Squibb Co*, 65 F3d 392 (CA 4, 1995); *Mendes v Medtronic, Inc*, 18 F3d 13 (CA 1, 1994); *Stamps v Collagen Corp*, 984 F2d 1416 (CA 5, 1993); *Stefl v Medtronic, Inc*, 916 SW2d 879 (Mo App, 1996); *Ambrosio v Barnes-Hind, Inc*, 211 AD2d 70; 625 NYS2d 740 (1995). The United States District Courts for the Eastern and Western Districts of Michigan have both adopted the majority position. *Strong v Telectronics Pacing Systems, Inc*, 891 F Supp 401 (WD Mich, 1994), rev'd on other grounds 78 F3d 256 (CA 6, 1996); *Kemp v Pfizer, Inc*, 835 F Supp 1015 (ED Mich, 1993). Recently, the Sixth Circuit Court of Appeals adopted the majority position. *Martin v Telectronics Pacing Systems, Inc*, 70 F3d 39 (CA 6, 1995).

Until now, no Michigan appellate state court has addressed in a published decision the preemptive effect of § 360k(a) in regard to state products liability claims against manufacturers of Class III medical devices. After much consideration, we reject the reasoning of *Martin* as well as the rest of the federal and state cases that have held that § 360k(a) preempts most or all state products liability claims against manufacturers of Class III medical devices. Instead, we are persuaded by the minority view, which rejects the view that § 360k(a) provides blanket preemption of all state law claims against manufacturers of Class III medical devices. *Kennedy v Collagen Corp*, 67 F3d 1453 (CA 9, 1995); *Ministry of Health, Province of*

*Ontario v Shiley Inc*, 858 F Supp 1426 (CD Cal, 1994); *Larsen v Pacesetter Systems, Inc*, 74 Hawaii 1; 837 P2d 1273 (1992), amended 74 Hawaii 650 (1992); *Haudrich v Howmedica, Inc*, 267 Ill App 3d 630; 642 NE2d 206 (1994). We therefore adopt the minority position. In particular, we find the analysis and reasoning of the Ninth Circuit Court of Appeals in *Kennedy* to be persuasive.

The Supremacy Clause of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." US Const, art VI, cl 2. Pursuant to the Supremacy Clause, Congress may preempt state law. *Louisiana Public Service Comm v Federal Communications Comm*, 476 US 355, 368; 106 S Ct 1890; 90 L Ed 2d 369 (1986). "Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' " *Cipollone v Liggett Group, Inc*, 505 US 504, 516; 112 S Ct 2608; 120 L Ed 2d 407 (1992), quoting *Rice v Santa Fe Elevator Corp*, 331 US 218, 230; 67 S Ct 1146; 91 L Ed 1447 (1947). Congressional intent is the touchstone of any preemption analysis. *Cipollone, supra,* 516. Congressional intent may be explicitly stated in the language of a statute or implicitly contained in its structure and purpose. *Id.* In the absence of an express preemption clause, state law is preempted if the state law actually conflicts with federal law or if federal law so thoroughly occupies a legislative field that it can be reasonably inferred that Congress did not intend the states to supplement it.

*Id.* If the statute contains an express preemption clause, the plain wording of the preemption clause must be examined because it contains the best evidence of Congress' preemptive intent. *CSX Transportation, Inc v Easterwood,* 507 US 658, 664; 113 S Ct 1732; 123 L Ed 2d 387 (1993). The question to be answered in instances of express preemption is the extent to which Congress intended to preempt state law. *Cipollone, supra,* 517; *Kennedy, supra,* 1456.

There is a strong presumption against preemption. *Cipollone, supra,* 523. This presumption is particularly strong when the regulations in question relate to health and safety, which have historically been matters of local concern, and when preemption would preclude state remedies where no federal remedy exists. *Ministry of Health, supra,* 1432.

The MDA was enacted in response to concerns regarding the safety of the Dalkon Shield and other medical devices, such as heart valves and pacemakers. *Id.,* 1434. The purpose of the MDA was to protect consumers from "increasingly complex devices which pose serious risk if inadequately tested or improperly designed or used." *Id.,* quoting S Rep No 94-33, 94th Cong, 2d Sess (1976), reprinted in 1976 US Code Cong & Admin News 1074. In introducing the legislation, Senator Edward Kennedy stated: "The purpose of this legislation is to protect the health and safety of the American people . . . the legislation is written so that the benefit of the doubt is always given to the consumer. After all it is the consumer who pays with his health and his life for medical device malfunctions." *Id.,* quoting 121 Cong Rec 59, 10688 (1975). The MDA was also written to encourage the research and devel-

opment of medical devices that would improve the health and longevity of American people. *Id.*

The MDA classifies medical devices as Class I, II, or III devices. 21 USC 360c(a). The degree of danger posed by the medical device to the public determines its classification. Class III medical devices are the most dangerous and the most heavily regulated. The Food and Drug Administration has classified extended wear soft contact lenses as Class III medical devices. 21 CFR 886.5925. Generally, Class III devices are subject to "premarket approval to provide reasonable assurance of [their] safety and effectiveness." 21 USC 360c(a)(1)(C). To obtain premarket approval, the manufacturer of a Class III medical device must submit a detailed application to the FDA containing, but not limited to, the following information: information regarding the safety and effectiveness of the device, the intended use of the device, the methods used to manufacture the device, copies of proposed labeling for the device, and any other information requested by the FDA. 21 USC 360e(c)(1)(A)-(G); 21 CFR 814.20(b)(1)-(12). The FDA refers each application to a panel that prepares a report and recommendation. 21 USC 360e(c)(2). The FDA must either accept or reject the application within 180 days after receiving the application. 21 USC 360e(d)(1)(a). Defendant submitted an application for premarket approval of Acuvue contact lenses. The FDA approved the application, subject to additional FDA "conditions of approval." There is no indication from the record that defendant failed to comply with the FDA's additional approval conditions.

The MDA contains an express preemption provision which provides as follows:

Except as provided in subsection (b)[3] of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement —

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter. [21 USC 360k(a).]

Whether Congress intended to preempt state law products liability actions is unclear from the express language of the preemption clause. If a statute is silent or ambiguous regarding congressional intent, a court may look to an agency's regulations for guidance in interpreting congressional intent. *Chevron, USA, Inc v Natural Resources Defense Council, Inc,* 467 US 837, 843; 104 S Ct 2778; 81 L Ed 2d 694 (1984). The court should defer to a federal agency's construction of the statute unless the agency's interpretation is unreasonable. *Id.,* 844. Because the FDA is the agency that implements the MDA, we must consider its interpretation of the preemption clause of the MDA. The FDA interprets the preemption clause as follows:

State or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other *specific requirements applicable to a particular device* under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements. [21 CFR 808.1(d) (emphasis added).]

---

[3] Subsection b permits a state to apply for an exemption from the preemption of subsection a and is not at issue in this case.

Defendant argues that the premarket approval process is a "specific requirement[] applicable to a particular device." We cannot agree. While most federal and state courts that have considered similar arguments have concluded that the premarket approval process satisfies the FDA's preemption rule and preempts state common-law claims, we agree with the court in *Kennedy* that these courts have failed to consider whether Class III medical devices as a group can constitute a "particular device" within the FDA's understanding of that term. *Kennedy, supra,* 1458. If the premarket approval process constitutes a specific requirement applicable to a particular device, then manufacturers of Class III medical devices would be immune from state products liability claims. However,

> it makes little sense to hold that the FDA's premarket approval process qualifies as a '*specific* requirement applicable to a *particular* device.' 21 CFR 808.1(d) (emphasis added). *All* class III devices are required to obtain premarket approval before being sold in interstate commerce. 21 USC 360e; 21 CFR 814.1. The fact that the premarket approval process involves specific requirements, *see* 21 CFR 814, 820, must not be confused with the premarket approval requirement itself acting as a *specific* requirement. [*Id.,* 1459.]

The conclusion that the premarket approval process satisfies the requirement that there be a specific requirement applicable to a particular device is also inconsistent with cases that have analyzed the preemption issue with regard to Class II medical devices:

> In Class II cases courts have consistently focussed [sic] both on the specificity of the federal requirement and the particularity of the device. . . . [O]ther courts have required

less overall specificity under § 808.1(d) for Class III devices than for Class II devices. They have required particularity in the preemption analysis of Class II devices, but have ignored the word 'particular' in the preemption analysis of Class III devices.

Such distinctions between Class II and Class III devices make little sense. Congress enacted the MDA to ensure that safe and effective medical devices were introduced into the market. HR Conf Rep No 1090. There is no reason for a court's preemption analysis to change depending on the class of device in issue. [*Id.*, 1458-1459.]

Moreover, it is the burden of the party arguing in favor of preemption to show that Congress intended to preempt state law, *Silkwood v Kerr-McGee Corp*, 464 US 238, 255; 104 S Ct 615; 78 L Ed 2d 443 (1984), and defendant has failed to show that there are any "specific requirements" that are uniquely applicable to disposable soft contact lenses. We find the court's reasoning in *Kennedy* to be persuasive and reject defendant's argument that the premarket approval process constitutes a specific requirement applicable to a particular device. "The federal law requiring the premarket approval of Class III devices was not enacted in order to free manufacturers from the everyday burdens of the marketplace after they are permitted to enter it. Premarket approval is supposed to benefit consumers, not create a rose garden, free from liability, for manufacturers." *Kennedy, supra,* 1459-1460.

While our rejection of the conclusion that § 360k(a) provides for blanket preemption of all state products liability claims is a departure from the majority position, we believe that our holding is consistent with congressional intent. Because Congress enacted the MDA to protect consumers, it would be entirely con-

trary to Congress' intent to interpret the MDA as providing for blanket preemption of state products liability claims against manufacturers of Class III medical devices. Moreover, Congress included in the MDA a provision stating that "[c]ompliance with an order issued under this section shall not relieve any person from liability under Federal or State law." 21 USC 360h(d). Congress' inclusion of such a provision in the MDA is evidence that Congress intended to preserve state products liability claims against manufacturers of Class III medical devices rather than to preempt such claims.

Accepting defendant's interpretation of Congress' intent in enacting § 360k(a) would result in the elimination of any remedy for a consumer injured by a Class III medical device and would effectively immunize manufacturers of Class III medical devices from claims brought by consumers injured by such devices. This was not the result Congress intended when it enacted § 360k(a). "The legislative history of the [Medical Device] Amendments shows an intent to protect consumers from medical device injuries, rather than leave them without a remedy." *Ministry of Health, supra*, 1440. We decline to interpret the MDA as immunizing manufacturers of Class III medical devices from claims brought by consumers injured by such devices and providing for blanket preemption of all state products liability claims against such manufacturers in the absence of more specific statutory language. "If the intent of Congress were to nullify an entire body of state consumer protection law, and leave the victims without a remedy, it would have specifically said so." *Id.*

In light of the purpose of the MDA of protecting con-
sumers from unsafe medical devices, the fact that
Congress did not provide any federal remedy in the
MDA is also compelling evidence that Congress did not
intend to provide for blanket preemption of state
products liability claims against the manufacturers of
Class III medical devices. Congress' silence regarding
whether it intended to preempt state products liability
claims by enacting the MDA "takes on added signifi-
cance in light of Congress' failure to provide any fed-
eral remedy for persons injured by such conduct. It is
difficult to believe that Congress would, without com-
ment, remove all means of judicial recourse for those
injured by illegal conduct." *Silkwood, supra,* 251. As
the court noted in *Kennedy, supra,* 1459:

> Reading the MDA's preemption provision in the manner
> advocated by the defendant would result in consumers of
> Class III devices being left without recourse for any harm
> suffered. Such a result flies in the face of the congressional
> intent behind the MDA legislation: consumer protection.

Courts that have held that § 360k(a) preempts state
products liability actions against manufacturers of
Class III devices have also failed to consider the
meaning of the words "general applicability" as used
in the context of 21 CFR 808.1(d)(1). *Id.,* 1458. 21
CFR 808.1(d) provides, in relevant part:

> There are other State or local requirements that affect
> devices that are not preempted by section 521(a) of the act
> [21 USC 360k(a)] because they are not 'requirements appli-
> cable to a device' within the meaning of section 521(a) of
> the act. The following are examples of State or local
> requirements that are not regarded as preempted by section
> 521 of the act:

(1) Section 521(a) does not preempt State or local requirements of *general applicability* where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the requirements are not limited to devices. [Emphasis added.]

State common law is a law of general applicability. *Kennedy, supra,* 1459. Furthermore, plaintiff's breach of implied warranty claim arises under the Uniform Commercial Code, MCL 440.2314, 440.2315; MSA 19.2314, 19.2315, and the UCC is specifically included in 21 CFR 808.1(d)(1) as an example of a law of general applicability. Thus, 21 CFR 808.1(d)(1) also supports our conclusion that plaintiff's negligent design and manufacture, negligent failure to warn, and breach of implied warranty claims are not preempted.

Defendant argues that plaintiff's failure to warn claim is preempted because it would impose a requirement that is "different from, or in addition to" the requirements imposed under the MDA. We disagree. According to plaintiff, defendant failed to include in or on the sealed contact lens dispensing box a warning of the risk of corneal ulcer associated with the use of Acuvue contact lenses. The MDA contains labeling requirements that are applicable to all medical devices regulated by the MDA. 21 USC 352(f) requires medical devices to have a label with "adequate directions for use," but provides that when such directions are "not necessary for the protection of the public health, the Secretary shall promulgate regulations exempting such drug or device from such requirement." The FDA has promulgated a regulation providing for an exemption from the labeling require-

ment of 21 USC 352(f) for "prescription devices" if certain conditions are met. 21 CFR 801.109. One of the conditions is that the medical device must be one "for which directions, hazards, warnings, and other information are commonly known to practitioners licensed by law to use the device." 21 CFR 801.109(c).

Plaintiff argues that the danger of increased risk of corneal ulcer was not commonly known when plaintiff was prescribed Acuvue contact lenses and that defendant therefore was required to include a warning in the package. Plaintiff's failure to warn claim is not based on state law. Plaintiff's failure to warn claim is actually a claim that defendant negligently failed to comply with the labeling requirements of the MDA as well as the labeling requirements of the applicable FDA regulation. 21 CFR 808.1(d)(2) specifically states that § 360k(a) "does not preempt State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the act." In *Ministry of Health, supra,* 1439, the court stated that "the MDA would *not* preempt claims that the manufacturer *negligently failed to comply with the* FDA's regulations, since a finding of wrongdoing would merely impose those regulations already imposed by the statute, and would not be 'different from or in addition to' those imposed by the MDA." Thus, to the extent that plaintiff's failure to warn claim is based on defendant's failure to comply with the MDA and 21 CFR 801.109, plaintiff's failure to warn claim merely seeks to enforce the federal standard established by the MDA and the appropriate FDA regulation and is therefore not preempted.

Defendant also contends that 21 CFR 808.1(b) supports its argument that plaintiff's claims are pre-

empted. In 21 CFR 808.1(b), the FDA states that "no State or political subdivision of a State may establish or continue in effect any requirement with respect to a medical device intended for human use having the force and effect of law (whether established by statute, ordinance, regulation, or court decision)." To the extent that the FDA's inclusion of the words "court decision" suggests that the FDA interprets § 360k(a) as preempting plaintiff's claims, the FDA regulation contradicts congressional intent as well as every other FDA regulation interpreting § 360k(a) and is not based on a permissible construction of the statute. *Chevron, supra*, 842.

Finally, defendant argues that the United States Supreme Court's decision in *Cipollone* supports its argument that plaintiff's claims are preempted. *Cipollone* involved an analysis of the preemptive effect of the Federal Cigarette Labeling and Advertising Act of 1965, and its successor, the Public Health Cigarette Smoking Act of 1969, 15 USC 1331 *et seq.* In contrast, the instant case involves the preemptive effect of § 360k(a) of the MDA and its accompanying regulations. The statutes in *Cipollone* were applicable to a particular product, whereas the MDA applies to medical devices generally as opposed to a specific medical device. While the language of the preemption clauses in the respective statutes is similar, it is not identical, and we conclude that the language of the MDA, the legislative history, and the FDA regulations reveal that Congress did not intend to preempt state products liability claims against manufacturers of Class III medical devices.

After our preparation of this opinion, but prior to its release, the United States Supreme Court decided

*Medtronic, Inc v Lohr*, 518 US ___; 116 S Ct 2240; 135 L Ed 2d 700 (1996). In *Lohr*, the Supreme Court held that § 360k(a) does not preempt all state common-law actions against the manufacturers of Class III medical devices. Unlike the contact lenses in this case, the medical device in *Lohr*, a pacemaker, had not undergone the premarket approval process because it was found to be "substantially equivalent" to a preexisting medical device and was allowed to avoid the premarket approval process and instead comply with a premarket notification process pursuant to 21 USC 360(k). However, for reasons stated previously in this opinion, we reject defendant's claim that the premarket approval process constitutes a "specific requirement[] applicable to a particular device" and thus preempts plaintiff's claims. We conclude that the reasoning and holding of *Lohr* is applicable to this case and supports our conclusion that plaintiff's claims are not preempted.

In sum, we conclude that § 360k(a), considered in conjunction with 21 USC 360h(d) and the applicable FDA regulations, supports a finding that Congress did not intend to preempt plaintiff's negligent design and manufacture, negligent failure to warn, and breach of implied warranty claims against defendant. The Supreme Court's holding in *Lohr* supports our holding in this case. Accordingly, we conclude that the trial court erred in granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(4).

Reversed and remanded. We retain no jurisdiction.

E. R. POST, J., concurred.

GRIFFIN, J. *(concurring)*. I concur in the result. In my view, *Medtronic, Inc v Lohr*, 518 US ___; 116 S Ct

2240; 135 L Ed 2d 700 (1996), is controlling. The ratio-
nale of *Medtronic* resolves the present issue whether
21 USC 360k(a) preempts state tort claims of breach
of implied warranty, negligent design, and failure to
warn arising from the use of medical devices that
were subjected to the premarket approval process.
For the most part, the majority's analysis is moot in
light of *Medtronic, supra*.