LCI INTERNATIONAL TELECOMMUNICATIONS CORPORATION v
DEPARTMENT OF COMMERCE

AT&T COMMUNICATIONS OF MICHIGAN, INC v DEPARTMENT OF
COMMERCE

Docket Nos. 194751, 202934. Submitted October 16, 1997, at Lansing. Decided December 23, 1997, at 9:25 A.M. Leave to appeal sought.

LCI International Telecommunications Corporation, a telecommunications carrier engaged in the business of transporting messages between points within Michigan's boundaries, an intrastate activity subject to regulation by the Public Service Commission, and messages crossing Michigan's boundaries, an interstate activity not subject to regulation by the PSC, brought an action in the Court of Claims contesting an order of the PSC that affirmed a hearing referee's rejection of LCI's challenge to assessments by the PSC for the cost of regulation pursuant to 1991 PA 179, MCL 484.2211; MSA 22.1469(211), and 1972 PA 299, MCL 460.112; MSA 28.84(2). The Court of Claims, William E. Collette, J., granted summary disposition for the plaintiff, finding that the assessments were improperly based on both interstate and intrastate operations of LCI, instead of intrastate operations as mandated by § 2 of Act 299. The Department of Commerce and the PSC appealed. (Docket No. 194751).

AT&T Communications of Michigan, Inc., a telecommunications carrier also engaged in interstate and intrastate operations and whose intrastate operations are not all subject to regulation by the PSC, brought an action in the Court of Claims, contesting the PSC's affirmance of a hearing referee's rejection of AT&T's objection to its assessments by the PSC, contending that its revenue from intrastate services not subject to regulation by the PSC should not be a basis for the assessments. The Court of Claims, James R. Giddings, J., granted summary disposition for the plaintiff, finding that the assessments may be based only on regulated intrastate activities. The Department of Commerce and the PSC appealed. (Docket No. 202934). The appeals were consolidated.

The Court of Appeals *held*:

1. Section 2 of Act 299 does not evince a legislative intent to delegate discretionary authority, but rather sets forth what is plainly meant to be a straightforward method of calculating each

public utility's pro-rata share of the cost of regulation. The Court of Claims properly held in the LCI case that § 2 of Act 299 clearly and unambiguously requires assessments to be based on the gross revenue derived from intrastate operations and that it was therefore improper to include LCI's gross revenue from interstate operations in determining LCI's assessment. The order of the Court of Claims in the LCI case must be affirmed except with regard to its holding that LCI is entitled to a retrospective remedy.

2. The Court of Claims erred in the AT&T case in concluding that gross revenues from otherwise intrastate operations may not be used in calculating an assessment under § 2 of Act 299 if the revenues were derived from services not presently subject to regulation by the PSC. Section 2 of Act 299 provides for assessments based on gross revenues derived from intrastate operations and does not require that such operation also be regulated. The order of the Court of Claims in the AT&T case must be reversed and the matter must be remanded to the Court of Claims for entry of an order reinstating the order of the PSC.

3. Although § 7 of Act 299, MCL 460.117; MSA 28.84(7), prescribes the remedy for persons who believe their assessment is excessive—an action for recovery of a payment in the Court of Claims—retroactive application of a decision and the appropriate remedy are separate issues. Prospective application is appropriate here because § 2 of Act 299 has been consistently interpreted for over twenty years in a manner that the Court of Appeals now finds to be erroneous. The Court of Appeals resolution of this issue was not clearly foreshadowed. Therefore, the part of the order of the Court of Claims in the LCI case that found that LCI was entitled to a retrospective remedy must be reversed.

Affirmed in part and reversed in part with respect to Docket No. 194751; reversed and remanded with respect to Docket No. 202934.

1. Telecommunications — Public Service Commission — Cost of Regulation — Words and Phrases — Gross Revenue From Intrastate Operations.

   Section 2 of 1972 PA 299 requires the Public Service Commission's assessment of a telecommunication provider under § 211 of 1991 PA 179 to pay the cost of PSC regulation to be based on the provider's gross revenue derived from intrastate operations, not interstate operations (MCL 460.112, 484.2211; MSA 22.84[2], 22.1469[211]).

2. Telecommunications — Public Service Commission — Cost of Regulation — Words and Phrases — Gross Revenue From Intrastate Operations.

Section 2 of 1972 PA 299 requires the Public Service Commission's assessment of a telecommunication provider under § 211 of 1991 PA 179 to pay the cost of PSC regulation to be based on the provider's gross revenues derived from intrastate operations, not gross revenues derived only from intrastate operations regulated by the PSC (MCL 460.112, 484.2211; MSA 22.84[2], 22.1469[211]).

3. STATUTES — JUDICIAL CONSTRUCTION — NEW RULES OF LAW — PROSPECTIVE APPLICATION.

Prospective application is preferred when a court creates a new rule of law by overruling an established precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

*Fraser Trebilcock Davis & Foster, P.C.* (by *David E. S. Marvin* and *Michael S. Ashton*), for LCI International Telecommunications Corporation.

*Fischer, Franklin & Ford* (by *George Hogg, Jr., Arthur J. Le Vasseur,* and *Sidney M. Berman*), for AT&T Communications of Michigan, Inc.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Don L. Keskey* and *Henry J. Boynton,* Assistant Attorneys General, for the defendants.

Before: YOUNG, P.J., and MARKMAN and SMOLENSKI, JJ.

PER CURIAM. Defendants appeal as of right orders of the Court of Claims granting summary disposition to plaintiffs, reversing the orders of the Public Service Commission that had rejected plaintiffs' challenges to the amounts they were assessed pursuant to statute to help pay for the cost of regulation. Because both cases presented similar legal questions, following oral arguments, by order sua sponte, we consolidated these appeals for joint consideration. We agree with plaintiffs that defendants misinterpreted the statutory language requiring assessments to be based on a util-

ity's "gross revenue . . . derived from intrastate operations," but we also agree with defendants that the statute does not exclude revenues derived from intrastate operations that are not subject to regulation by the PSC.

Section 211 of the Michigan Telecommunications Act, 1991 PA 179, MCL 484.2211; MSA 22.1469(211), provides:

> Each telecommunication provider of a regulated service in this state shall pay an assessment in an amount equal to the expenses of the commission pursuant to Act No. 299 of the Public Acts of 1972, being sections 460.111 to 460.120 of the Michigan Compiled Laws.

Section 2 of Act 299, MCL 460.112; MSA 22.84(2) provides:

> The department within 30 days after the enactment into law of any appropriation to it, shall ascertain the amount of the appropriation attributable to the regulation of public utilities. This amount shall be assessed against the public utilities and shall be apportioned amongst them as follows: The gross revenue for the preceding calendar year derived from intrastate operations for each public utility shall be totaled and each public utility shall pay a portion of the assessment in the same proportion that its gross revenue for the preceding calendar year derived from intrastate operations bears to such total. Each public utility shall pay a minimum assessment of not less than $50.00.

LCI is a telecommunications carrier that is engaged in the business of transporting messages between points within Michigan's boundaries and messages crossing Michigan's boundaries. All the former are subject to regulation by the PSC and all the latter by the Federal Communications Commission. Similarly, AT&T of Michigan engages in some activities that are

subject to federal regulation only. However, unlike LCI, some of the services provided by AT&T that are not subject to federal regulation are also not subject to regulation by the PSC. Those services were "deregulated" by 1991 PA 179, which replaced the regulation of telecommunication services providers with the regulation of certain telecommunication services.

LCI objected to initial assessments for the cost of regulation pursuant to Act 299 for five quarters in 1992 and 1993. LCI was assessed $62,464.20 for these quarters. LCI contended that the assessments were too high because they were based on both LCI's gross revenue "derived from intrastate operations" and gross revenue derived from the transportation of messages across state lines. The parties have stipulated that, if LCI's gross revenue derived from what it believes are interstate operations is excluded, then its total assessment for the same period would be $20,423.79, or 32.69 percent of the amount initially assessed. Similarly, AT&T objected to assessments totaling $932,580.15, contending that the correct amount should be $323,629.63, 35.67 percent of the initial assessment. In doing so, AT&T contended that revenues derived from all services not subject to regulation by the PSC should be eliminated from the calculation.

In each case, a hearing officer rejected plaintiffs' challenges and found the initial assessments to be proper under Act 299. In so finding, the hearing officer relied in part upon Interpretative and Informational Statement 1975-1 (February 19, 1975) of the PSC, which included the following definition:

Gross revenue for the preceding calendar year derived from intrastate operations of each public utility subject to

the provisions of Act 299 shall be all revenue earned from utility operations within the boundaries of the state of Michigan and subject to Michigan income tax.[1]

LCI, then known as LiTel Telecommunications Corporation, filed exceptions to the hearing officer's proposal for decision. In an opinion and order dated March 30, 1994, the PSC rejected LiTel's objections to the amount of the assessment:

> The Commission finds that LiTel's assessments were properly computed and that they reflect an allocation of the total regulatory costs "in the same proportion that [LiTel's] gross revenue . . . derived from intrastate operations bears to such total." (MCL 460.112.) As argued by the Staff, use of the term "intrastate operations" should not be understood in the same sense as it is used in statutes delineating federal and state jurisdiction. Act 299 does not purport to address jurisdictional boundaries. It provides a mechanism for allocating and assessing the regulatory costs attributable to those public utilities that fall under the Commission's jurisdiction by operation of other enabling statutes.
>
> By adopting gross revenue derived from intrastate operations as the basis for apportionment, Act 299 recognizes that the costs of regulation should be apportioned in a manner that reflects the extent to which each utility is responsible for the Commission's deployment of its administrative resources. This purpose is consistent with a common-sense understanding of the statutory phrase "intrastate operation." The revenues that a regulated public utility earns from its Michigan operations provide an appropriate and equitable basis for estimating the extent to which that utility contributes to the overall necessity of maintaining a system of reg-

---

[1] Although the PSC rescinded Interpretative and Informational Statement 1975-1 in an order entered August 20, 1985, because of its "dubious legal validity" as an interpretative statement not promulgated pursuant to the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, it is undisputed that assessments under Act 299 have continued to be based on the definition contained in the statement.

ulation that protects the public interest. The standard proposed by LiTel does not adequately reflect the costs incurred and burdens assumed in regulating companies having both regulated and non-regulated operations.

The ALJ did not err in citing the I&I Statement as support for his conclusion that LiTel's assessment was based on a proper apportionment. Although the rescission of the I&I Statement deprives it of any legal effect, the Commission agrees with the conclusion it reached. Moreover, because the I&I Statement was issued shortly after the Legislature passed Act 299, it may be relied upon as an indication of legislative intent. LiTel has not presented any persuasive reasoning for departing from this long-standing understanding of how the assessment mechanism was intended to operate.

Nor did the ALJ err by referring to the discussion of the repealed corporate income tax in the I&I Statement. The Department relied upon the tax as analogous to the apportionment provisions of Act 299. The tax's subsequent repeal does not affect the validity of the apportionment method that was adopted in Act 299.

LiTel argues that the ALJ erred by failing to consider the Act 299 provision for granting exemptions when the utility's gross revenues derived from intrastate operations are determined not to be a fair or equitable basis for making assessments. (MCL 460.118.) However, there has been no showing that the method of apportionment used to calculate LiTel's assessment was in any respect unfair or inequitable. LiTel has not demonstrated why it should be treated differently from other utilities for purposes of applying Act 299.

The PSC also rejected a claim that federal law preempts the application of Act 299 to revenues realized in Michigan based on interstate telecommunications services. Finally, the PSC rejected claims that Act 299 as applied violates the federal Commerce Clause and the right to equal protection.

AT&T's exceptions to a hearing officer's proposal for decision were also rejected by the PSC in an opin-

ion and order dated August 14, 1995. The PSC relied upon its decision in the LiTel case and provided the following additional reasons for its decision:

> Furthermore, the Commission does not believe that the Legislature, in enacting Act 179, intended that the Commission consider only revenue derived from regulated services as the basis for Act 299 assessments. Contrary to AT&T's contention, Section 211 of Act 179 does not affect the meaning of "gross revenue . . . derived from intrastate operations." Section 211 does not provide that a telecommunications provider's gross revenue derived from only its regulated services determines the amount of the assessment.
>
> The Commission further notes that the Legislature, in enacting Act 36 of 1992, amended Act 299 to reflect changes brought about by Act 179. However, the Legislature did not alter the assessment scheme. Had the Legislature intended that only revenue from a provider's regulated services be considered for assessment purposes, it would have done so during the amendment of Act 299. Since it declined to alter Act 299 in that manner, the Commission cannot conclude, as suggested by AT&T, that Section 211 of Act 179 indicates any legislative intent for a change in the basis for assessments.
>
> The Commission therefore will not grant AT&T's request to alter its assessment to reflect only revenue from regulated services. However, the Commission is in general agreement that the regulatory assessment of a provider should be more closely aligned with the actual burden presented by that provider. Revenue from regulated services seems to be a reasonable basis.
>
> Act 179 expires at the end of this year, and efforts are now underway to craft amendments. The Commission would support legislation that appropriately effectuates changes in the assessments levied on telecommunications providers for regulatory purposes.[2]

---

[2] No amendments were made to Act 179 or Act 299 that would require a change in the computation of assessments under Act 299.

LCI filed an action in the Court of Claims pursuant to MCL 460.117; MSA 22.84(7) and moved for summary disposition. In an opinion and order entered April 2, 1996, the Court of Claims granted the motion for summary disposition, finding that the word "intrastate" as used in Act 299 is plain and unambiguous.

> It appears elementary to this Court that "intrastate operations" denotes operations which occur entirely within the boundaries of one state. Those operations which begin in one state and terminate in another state can more properly be termed interstate operations.

By way of a remedy the Court of Claims found LCI entitled to a refund of those amounts for which it was improperly assessed. The parties stipulated to stay the effect of the order pending appeal.

AT&T likewise filed an action in the Court of Claims and moved for summary disposition. In an opinion delivered from the bench on June 27, 1996, the Court of Claims held that there is "only one reasonable interpretation" of § 2 of Act 299, "which is to assess the cost of regulation on those people who engage in regulated activity in relationship to the extent that their activity contributes to MPSC's operation." "In my view, the only thing they can assess or make the assessment on is based on regulated activity." By order entered April 10, 1997, the Court of Claims reversed the order of the PSC and ordered that AT&T be refunded amounts to which the parties had stipulated, subject to the further stipulation that the order would be stayed pending appeal and that the propriety of a refund would be determined on appeal.

Defendants appeal as of right both orders of the Court of Claims. The appeals were consolidated.

Defendants argue that the Court of Claims failed to show adequate deference to the interpretation given the statute by the administrative body chosen by the Legislature to administer it. We disagree. It is true that in legislation governing public utilities, an administrative regulator is vested with a wide range of discretion. *In re 1987-88 Medical Doctor Provider Class Plan*, 203 Mich App 707, 729; 514 NW2d 471 (1994). However, although many statutes governing utilities contain explicit or implicit delegations of "quasi-legislative" power, § 2 of Act 299 does not evince a legislative intent to delegate discretionary authority, but rather sets forth what is plainly meant to be a straightforward method of calculating each public utility's pro-rata share of the cost of regulation. Moreover, although we are mindful that a reviewing court should give due deference to the PSC's administrative expertise and may not substitute its judgment for that of the PSC, this does not mean that a reviewing court should abandon altogether its responsibility to interpret legislative intent. *Miller Bros v Public Service Comm*, 180 Mich App 227, 232; 446 NW2d 640 (1989); *Attorney General v Public Service Comm*, 206 Mich App 290, 294; 520 NW2d 636 (1994). Statutory interpretation is a question of law for the courts. A clear and unambiguous statute leaves no room for construction or interpretation. If, however, interpretation is necessary, then a reviewing court must determine the Legislature's intent. *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993).

We agree with the Court of Claims in the LCI case that § 2 of Act 299 clearly and unambiguously requires assessments to be based on the gross revenue derived from "intrastate operations," and that it is

therefore improper to include revenues derived from the transportation of messages that originate in Michigan but that end outside Michigan. Such services are interstate operations, not intrastate operations.

We recognize that defendants' interpretation of the statute has the virtue of ease of administration and calculation. However, convenience cannot override clear statutory language. Moreover, we are required to construe the statute in a manner that gives effect to all its words. Under defendants' interpretation, "intrastate" does not appear to function as limiting language or indeed to function at all. If "intrastate" did not appear in § 2 of Act 299, defendants would still presumably include all revenues generated by a utility in the state in calculating its assessment.[3] As best as we can understand, the PSC has accorded no independent meaning to this term in its interpretation of § 2.

Although we agree with the Court of Claims in the LCI case, we disagree with the conclusion reached in the AT&T case that gross revenues from otherwise intrastate operations may not be included in calculating an assessment under § 2 of Act 299 if the revenues were derived from services not presently subject to regulation by the PSC. Such an interpretation of § 2 of Act 299 requires reading into it language—"regulated"—that the Legislature itself chose not to use.[4]

---

[3] In either case, assessments could not be based on revenues generated wholly outside the state because they would bear no reasonable relationship to the cost of regulation in this state.

[4] The Court of Claims determined that the PSC's longstanding interpretation of the act was unfair to telecommunications companies whose revenues from operations in the state were out of proportion to their relative contribution to the PSC's regulatory expenses. We do not necessarily disagree with the Court of Claims' estimation of the fairness of the system

Indeed, the Legislature chose not to use such language even after Act 299 was amended in connection with the Michigan Telecommunications Act, following the PSC's administrative interpretation of § 2 of Act 299. See *Dykstra v Dep't of Natural Resources*, 198 Mich App 482, 490; 499 NW2d 367 (1993). Section 1 of Act 299 was amended by 1992 PA 36 to clarify that providers of telecommunication services, only some of whose services are now subject to regulation, remain subject to assessments under Act 299. The Legislature did not amend § 2 of Act 299 to provide that assessments against providers of telecommunication services should be based on gross revenues derived from regulated intrastate operations.

Plaintiffs note that § 7 of Act 299 provides that the exclusive remedy for persons who believe that their assessment is excessive, erroneous, or invalid is "an action for recovery of a payment" in the Court of Claims. Plaintiffs therefore contend that they are entitled to refunds. Defendants argue that under the circumstances, our holding that § 2 of Act 299 has been misinterpreted should apply prospectively only. We agree with defendants. Although the statute prescribes the remedy, retroactive application of a decision and the appropriate remedy are separate issues. *Fonger v Dep't of Treasury*, 193 Mich App 71, 75; 483 NW2d 920 (1992). Prospective application is preferred when overruling an established precedent or when deciding an issue of first impression whose

---

although we come to a different conclusion with regard to the scope of discretion to which the PSC is entitled under that system. Indeed, the PSC itself has acknowledged that its interpretation of the phrase "gross revenues . . . derived from intrastate operations" may not be the most equitable means of apportioning the costs of regulation.

resolution was not clearly foreshadowed. *Buckeye Marketers, Inc v Finishing Services, Inc*, 213 Mich App 615, 618; 540 NW2d 757 (1995); see also *Chevron Oil Co v Huson*, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971). Prospective application is appropriate here because § 2 of Act 299 has been consistently interpreted for over twenty years in a manner that we now hold to be erroneous. Our resolution of this issue was not clearly foreshadowed. Indeed, the issue is a close one that was well argued by all parties. Finally, ordering defendants to refund past assessments paid under protest would undercut the primary legislative intent underlying Act 299, i.e., to require utilities to pay for the costs of regulating them, unless defendants were able to reassess all utilities for the periods in question. Even if doing so would be legally permissible, the difficulties of administration and the upsetting of settled expectations of other utilities would make this inequitable.

With respect to the LCI case, we affirm the order of the Court of Claims except with regard to its holding that LCI is entitled to a retrospective remedy; with respect to the AT&T case, we affirm the order of the Court of Claims consistent with this Court's affirmance of the Court of Claims order in the LCI case, and we otherwise reverse and remand for entry of an order reinstating the PSC's order.