YELLOW FREIGHT SYSTEM, INC v STATE OF MICHIGAN

Docket Nos. 194703, 195564. Submitted April 14, 1998, at Lansing. Decided
August 14, 1998, at 9:15 A.M. Leave to appeal sought.

Yellow Freight System, Inc., a carrier engaged in interstate commerce,
brought an action in the Court of Claims against the state of Michi-
gan and others, seeking a partial refund of truck registration fees
paid pursuant to MCL 478.7(4); MSA 22.565(1)(4). The plaintiff con-
tended that the fees exceeded the amount allowed by 49 USC
11506, now recodified as 49 USC 14504. The court, William E. Col-
lette, J., entered a judgment in favor of the plaintiff, granting it a
partial refund plus interest, but denied its request for attorney fees
pursuant to 42 USC 1988. The defendants appealed the ordered par-
tial refund and interest, and the plaintiff appealed the denial of
attorney fees. The appeals were consolidated.

The Court of Appeals *held*:

1. The trial court correctly deferred to the Interstate Commerce
Commission with respect to the commission's interpretation of 49
USC 11506(c)(2)(B)(iv)(III). This statute, in directing the commis-
sion to reform the licensing and registration system existing in the
states, expressly provided for the establishment of a fee system
that "will result in a fee for each participating State that is equal to
the fee, not to exceed $10 per vehicle, that such State collected or
charged as of November 15, 1991." The commission in *American
Trucking Ass'ns—Petition for Declaratory Order—Single State Ins
Registration*, 9 ICC2d 1184 (1993), reasonably interpreted the stat-
ute as requiring that fees be fixed at the level in effect for the 1991
registration year. The trial court correctly determined that the fees
at issue in this case, which exceeded the level in effect in 1991
after changes were made to the fee-waiving scheme for states with
fee-waiving agreements, were not in compliance with the statute.
Any effective change or repeal of reciprocity agreements occa-
sioned by the statute is within Congress' authority under the Com-
merce Clause, US Const, art I, § 8. The trial court properly consid-
ered *American Trucking, supra*, even though the notice of institu-
tion of that declaratory action did not indicate facts specific to
Michigan. The consideration of reciprocity agreements in determin-
ing the amount of fees "charged or collected as of November 15,
1991," is mandatory.

2. Governmental immunity from tort liability, MCL 691.1407; MSA 3.996(107), is not a defense to the plaintiff's action because the action is not a tort action but an action in assumpsit for money had and received.

3. The plaintiff was not required by § 63 or § 64 of the Administrative Procedures Act, MCL 24.263, 24.264; MSA 3.560(163), 3.560(164), to first seek a declaratory judgment or ruling by the Public Service Commission before bringing its action in the Court of Claims. The plaintiff's action, being one in assumpsit for money had and received is not subject to § 64, which allows actions for declaratory judgment for challenging the validity or applicability of formally promulgated administrative rules. Section 63 provides for, but does not require, an agency declaratory ruling regarding the applicability of a rule or order to an actual state of fact.

4. The ordered refund is an appropriate remedy. Prospective relief only would be inadequate. Due process requires backward-looking relief to rectify any unconstitutional deprivation of property that results where the state places a taxpayer under duress to pay a tax when due and relegates the taxpayer to a postpayment refund action in which to challenge the legality of the tax.

5. The trial court correctly denied the plaintiff's request for attorney fees pursuant to 42 USC 1988. The plaintiff's claim against the state under 42 USC 1983 cannot succeed because § 1983 applies to persons and case law holds that a state agency is not a person for purposes of § 1983. Case law also holds that a state court cannot grant injunctive or declaratory relief under § 1983 in state tax cases when an adequate legal remedy exists.

Affirmed.

O'CONNELL, J., concurring in part and dissenting in part, stated that there is no ambiguity in 49 USC 11506(c)(2)(B)(iv)(III) and that the plain wording of that provision fixes fee levels to that charged or, as in this case, collected as of November 15, 1991. The plaintiff is not entitled to any relief because the fees at issue were at the level collected as of that date.

1. COURTS — STATUTORY CONSTRUCTION — FEDERAL STATUTES.

A court reviewing a federal statute that is silent or ambiguous regarding congressional intent should defer to the interpretation of the statute made by the federal agency charged with its administration unless the interpretation is unreasonable.

2. ACTIONS — RECOVERY OF FEES PAID TO STATE — ASSUMPSIT FOR MONEY HAD AND RECEIVED.

An action to recover fees paid to the state in excess of the amount allowed by federal law is in assumpsit for money had and received.

3. CONSTITUTIONAL LAW — DUE PROCESS — REFUND OF ILLEGAL TAXES.

Due process obligates a state to provide meaningful backward-looking relief, e.g., a refund, to rectify any unconstitutional deprivation that results where the state places a taxpayer under duress to pay a tax when due and relegates the taxpayer to a postpayment refund action in which to challenge the legality of the tax (US Const, Am XIV).

4. CIVIL RIGHTS — FEDERAL CIVIL RIGHTS ACT — PERSONS — STATE AGENCIES.

The federal civil rights act does not apply to a state agency; the act applies to persons, and a state agency is not a person for purposes of the act (42 USC 1983).

5. CIVIL RIGHTS — FEDERAL CIVIL RIGHTS ACT — STATE TAX CASES — INJUNCTIVE OR DECLARATORY RELIEF.

A state court cannot grant injunctive or declaratory relief under the federal civil rights act in state tax cases when an adequate legal remedy exists (42 USC 1983).

*Eames Wilcox* (by *Ronald J. Mastej* and *John W. Bryant*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Don L. Keskey* and *Judith I. Blinn*, Assistant Attorneys General, for the defendants.

Before: GRIFFIN, P.J., and McDONALD and O'CONNELL, JJ.

McDONALD, J. Plaintiff, an interstate commercial carrier, brought this action asserting that defendants (the state) had collected registration fees pursuant to MCL 478.7(4); MSA 22.565(1)(4) in excess of the amount allowed by federal law, specifically the single-state registration system (SSRS). The Court of Claims, ruling on cross motions for summary disposition, agreed with plaintiff and granted its motion. The court entered judgment in favor of plaintiff for $99,580 plus interest and ordered that the state was barred from further collection of the registration fees

until 49 USC "11506(c)(B)(iv) [sic] is rescinded." In Docket No. 194703, the state appeals this ruling as of right. In Docket No. 195564, plaintiff challenges the Court of Claims' denial of plaintiff's request for attorney fees. We affirm.

I

In 1991, Congress passed the Intermodal Surface Transportation Efficiency Act (ISTEA), PL 102-240, which substantially amended 49 USC 11506[1] and directed the Interstate Commerce Commission (ICC) to reform the licensing and registration system existing in the states. The statute mandated the creation of a new system, the SSRS. The statute required the ICC to prescribe amendments of the previously existing standards and set forth certain requirements for the new standards.[2]

The provision at issue, 49 USC 11506(c)(2)(B)(iv)(III), stated that the amended standards shall establish a fee system that "will result in a fee for each participating State that is equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991." The regulations promulgated by the ICC repeated the phrase "collected or charged as of November 15, 1991" without further explanation. See 49 CFR 1023.4(c)(4)(ii) (1995), later redesignated as 49 CFR 367.4(c)(4)(ii) (1996).

---

[1] 49 USC 11506 was amended and recodified and now appears at 49 USC 14504. To avoid confusion, we will refer only to 49 USC 11506.

[2] The registration system in effect before and after the ISTEA is explained in detail in *Nat'l Ass'n of Regulatory Utility Comm'rs v ICC*, 309 US App DC 325; 41 F3d 721 (1994).

Because the statute essentially froze the fees a state could collect at the level existing as of November 15, 1991, the fee system in effect in this state at that time is pertinent to understanding the issues raised in this case. For the 1991 and 1992 registration years, the state collected fees by requiring interstate carriers to buy cab card stamps, also known as "bingo stamps," for each of the carrier's vehicles operating within the state. Each stamp cost $10. Pursuant to MCL 478.7(4); MSA 22.565(1)(4), the state had reciprocity agreements with certain other states so that each would waive the fees for vehicles from the other. The dispute arises in part because the state changed the method it used for determining reciprocity. For 1991, the state used the "base-plating system," which means that reciprocity was determined by the state of the vehicle's registration. In early 1991, the Public Service Commission (PSC) decided that it would quit using the base-plating system. Instead, for the 1992 registration year, fees and reciprocity were determined by the carrier's principal place of business. The revised renewal applications were mailed to all interstate motor carriers in September 1991. Importantly, the 1992 fees to be "collected or charged" by the state were based on a calendar year and therefore were not due and owing until January 1, 1992.

The change in the method of determining reciprocity resulted in a substantial increase in the fees plaintiff owed the state for the 1992 registration year. Under the base-plating system used for 1991, plaintiff paid the state $50 for five vehicles that were "base-plated" in Oklahoma, but paid nothing for 3,730 vehicles "base-plated" in Illinois and Indiana, because

those states did not charge fees for vehicles based in Michigan. However, plaintiff's principal place of business is Kansas, which had no fee waiver agreement with Michigan. Therefore, for 1992, plaintiff paid $10 a vehicle, a total of $37,850 under the new system. Plaintiff sent, and the state received, the fees for 1992 before November 15, 1991. Plaintiff voluntarily paid its 1992 fees early in order to prevent any disruption of its trucking activities at the commencement of the 1992 calendar year.

II

The state argues the Court of Claims erred in determining that the state could not charge plaintiff $10 a vehicle. According to the state, it had "charged or collected" $10 a vehicle as of November 15, 1991. Plaintiff argued, and the Court of Claims agreed, the statute was properly interpreted to refer to the fees charged or collected for the 1991 registration year. We affirm the Court of Claims' decision with regard to this issue.

The Court of Claims' opinion indicates its decision was based on the ICC's decision in *American Trucking Ass'n Ins—Petition for Declaratory Order—Single State Ins Registration,* 9 ICC2d 1184 (1993).     In *American Trucking,* the ICC discussed various issues that had arisen under the SSRS. The plaintiff sought clarification from the ICC concerning the statutory language. The ICC summarized the issue raised by the plaintiff in the following way:

> Yellow [Freight] raises the issue of whether the statutory language concerning the fee charged on November 15, 1991, relates to fees charged for the 1991 registration year or the 1992 registration year. (Under the "bingo" regulations, carri-

ers filed applications between October 1 and December 31 for stamps or identification numbers for the ensuing year.) Yellow points out that it paid a State zero fees covering 1991 operations and $10 per vehicle fees covering 1992 operations. However, Yellow paid the 1992 fees prior to November 15, 1991. It would have the Commission conclude that the focus of the statute is on the 1991 registration year and that the fee for 1992 is not germane.

The ICC resolved the matter as follows:

> Yellow has raised the issue of whether the statutory language concerning the "fee charged or collected as of November 15, 1991[,]" relates to fees charged for the 1991 registration year or for the 1992 registration year. We think it clear that the statutory language concerns only fees charged or collected for the 1991 registration year, and we so find.

The state argues the court should not have followed *American Trucking* because it does not comport with the unambiguous language of the statute and renders the November 15, 1991, deadline a "nullity." Therefore, the state argues the decision was not entitled to the deference usually afforded an agency's interpretation of a statute that the agency is charged with enforcing.

This Court has recognized that deference should be given to the interpretation of a federal statute by the agency administering it and that following an agency's interpretation promotes uniformity in application by the states. *Gibbs v General Motors Corp*, 134 Mich App 429, 432; 351 NW2d 315 (1984). Where a statute is silent or ambiguous regarding congressional intent, a reviewing court "should defer to a federal agency's construction of the statute unless the agency's interpretation is unreasonable." *Walker v Johnson & John-*

*son Vision Products, Inc*, 217 Mich App 705, 713; 552 NW2d 679 (1996), citing *Chevron USA, Inc v Natural Resources Defense Council, Inc*, 467 US 837, 844; 104 S Ct 2778; 81 L Ed 2d 694 (1984).

Congress' intent concerning the allowable fee levels is not clear with respect to the pertinent period for fixing the fee levels. The phrase "as of November 15, 1991" denotes a period that ends on the specified date. However, the statute is silent regarding when the period begins. One could argue a state that had charged or collected fees from a carrier in *any* year before 1991 was entitled to continue to collect the fees under the SSRS. On the other hand, one could conclude, as the ICC did, that the relevant period was the registration year that included November 15, 1991. We do not believe Congress "had an intention on the precise question at issue . . . ." *Id.* at 843, n 9. Because the statute does not reveal congressional intent, we should defer to the ICC's interpretation unless it is unreasonable. *Walker, supra.*

We conclude that the agency's interpretation of the statute was reasonable. In our opinion, the agency acted reasonably in determining the fees should be fixed at the level in effect for the 1991 registration year, regardless of whether a new basis for determining reciprocity had been announced for 1992 or whether certain carriers had paid fees for 1992 before November 15, 1991. Plaintiff's voluntary payment of fees not due and owing does not affect our analysis.

The state also contends the Court of Claims' ruling applying the *American Trucking* decision by the ICC "effectively repeals existing reciprocity agreements and/or alters them to reinstate a previous basis for determining fee waivers thereunder[,]" and thereby

"contravenes the Tenth Amendment."[3] This argument
has no merit. We disagree with the premise of the
state's argument, i.e., that the Court of Claims' deci-
sion repeals or alters any reciprocity agreements. Any
effect on a state's ability to alter its reciprocity agree-
ments is the result of Congress' decision to freeze
fees at the level as of November 15, 1991. Congress
has the authority to take this action under the Com-
merce Clause, US Const, art I, § 8.

The state argues the language in the *American
Trucking* decision by the ICC was not binding on the
state because the notice of institution of declaratory
action resulting in that decision did not indicate facts
specific to Michigan. We disagree. The Court of
Claims did not conclude that the ICC decision in
*American Trucking* was binding on the state. How-
ever, the court could not properly disregard the
agency's interpretation of a statute merely because
the state did not participate in the proceeding. The
state has not provided, nor are we aware of, any
authority holding that an alleged deficiency in the
notice of institution of declaratory action affects judi-
cial review of an agency's interpretation of a statute.

The state also suggests that states should not be
required to consider reciprocity agreements in deter-
mining the amount of fees "charged or collected as of
November 15, 1991." In *Single-State Ins Registration*,
9 ICC2d 610 (1993), the ICC determined that states
must consider the reciprocity agreements. The ICC's
decision in this regard was upheld in *Nat'l Ass'n of
Regulatory Utility Comm'rs v ICC*, 309 US App DC

---

[3] US Const, Am X states, "The powers not delegated to the United
States by the Constitution, nor prohibited by it to the States, are reserved
to the States respectively, or to the people."

325; 41 F3d 721 (1994).  Although that decision is not binding on this Court, we find it persuasive and adopt its ruling with regard to this issue.

III

We also reject the state's argument that governmental immunity, MCL 691.1407;  MSA 3.996(107), bars plaintiff's action. The wrong alleged by plaintiff does not fall within the definition of a tort. This action to recover fees paid in excess of the amount allowed by federal law is analogous to an action to recover illegal taxes. " 'The remedy to recover illegal taxes paid is in assumpsit for money had and received.' " *Service Coal Co v Unemployment Compensation Comm*, 333 Mich 526, 531; 53 NW2d 362 (1952), quoting *Salisbury v Detroit*, 258 Mich 235; 241 NW 888 (1932).  An action in assumpsit for money had and received is not an action in tort. Therefore, governmental immunity from tort liability under MCL 691.1407;  MSA 3.996(107)  does not apply.

IV

The state also contends plaintiff was required to request a declaratory ruling from the PSC as a prerequisite to court review. We disagree. The state relies on both §§ 63 and 64 of the Administrative Procedures Act, MCL 24.263;  MSA 3.560(163)  and MCL 24.264; MSA 3.560(164).  However, neither section would support reversing the judgment entered in favor of plaintiff.

Plaintiff's action is not accurately characterized as simply an action for a declaratory judgment available under § 64. Rather, as previously discussed, the action was essentially an action in assumpsit for

money had and received. Furthermore, only the validity or applicability of rules that had been formally promulgated as rules may be challenged in actions for declaratory judgments under § 64. See *Jones v Dep't of Corrections*, 185 Mich App 134, 137; 460 NW2d 575 (1990). The state has not suggested that the collection of fees was pursuant to a rule that had been formally promulgated under the APA. Because plaintiff's action was not a challenge to the validity or applicability of a formally promulgated rule, § 64 of the APA does not require plaintiff to get a declaratory ruling as a prerequisite to judicial review.

To the extent that the state claims that plaintiff was required to get a declaratory ruling under § 63, we also find that section inapplicable. Section 63 indicates that the agency "may issue a declaratory ruling as to the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency." Assuming plaintiff could have requested a declaratory ruling, § 63 does not require plaintiff to do so before seeking judicial review.

V

We next address the relief that the court awarded to plaintiff, specifically, a refund of $99,580, which is the amount collected for 1994, 1995, and 1996. Arguing that a refund is contrary to the United States Supreme Court decision in *McKesson Corp v Division of Alcoholic Beverages & Tobacco*, 496 US 18; 110 S Ct 2238; 110 L Ed 2d 17 (1990), the state requests the remedy be limited to prospective relief commencing at the time of "any final appellate decision" on the issue.

Contrary to the state's argument, we believe that *McKesson* indicates that a refund is an appropriate remedy in this case. In *McKesson*, the United States Supreme Court considered whether prospective relief was an adequate remedy for wholesale liquor distributors who sought a refund of excess taxes they had paid pursuant to Florida's excise tax scheme. The scheme was found unconstitutional because it discriminated against interstate commerce. In determining the appropriate remedy, the Court concluded that due process required more than prospective relief:

> The question before us is whether prospective relief, by itself, exhausts the requirements of federal law. The answer is no: If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation. [*Id.* at 31.]

The state cites *McKesson* for its discussion of the "pass-on" defense to an action for a tax refund. See *McKesson, supra* at 47-48. The state suggests a refund is not necessary if the expense of the unlawfully collected fees was passed on to plaintiff's customers. However, the *McKesson* Court ultimately rejected the defense in that case, *id.* at 48-49. The state has not cited any authority indicating that the pass-on defense has been adopted in this jurisdiction, and we decline to adopt it in this case.

The state also cites *LCI Int'l Telecommunications Corp v Dep't of Commerce*, 227 Mich App 196; 574 NW2d 710 (1997), as support for its argument that plaintiff should receive only prospective relief. In *LCI*, this Court determined that the defendants had con-

sistently misinterpreted a statute for over twenty years, resulting in improper assessments against telecommunications carriers. The Court held that its holding should be applied only prospectively, in part because the ruling was not "clearly foreshadowed." In the present case, the result was clearly foreshadowed by the ICC's decisions in *American Trucking* and *Single-State Registration*, which were issued in 1993, less than a year after the ICC adopted the SSRS.

The state also contends that, if this Court does not limit Yellow Freight to prospective relief, it should order a remand to the PSC to allow the state to change the fee schedule to retroactively surcharge carriers who benefited from the state's misapplication of the SSRS. The state relies on language in *McKesson* suggesting that, as one of the alternatives to providing a refund to the aggrieved distributors in that case, Florida could assess and collect back taxes from the petitioners' competitors. *Id.* at 40. However, the adequacy of any remedy necessarily depends on the basis for relief. In *McKesson*, the petitioners were entitled to relief because a statute imposing an excise tax discriminated in favor of distributors of local products. The remedies the Court approved were ways Florida could undo the discriminatory effects of the statute and make the tax scheme valid under the Commerce Clause. In the present case, plaintiff is entitled to relief because the state collected fees contrary to a statute. Because the purpose of the relief in this instance is not to undo discriminatory effects, surcharging carriers who were allegedly undercharged is unrelated to providing plaintiff with an adequate remedy in this case. The only way to provide plaintiff with "meaningful backward-looking relief," *McKesson,*

*supra* at 31, to undo the misapplication of the statute is to order a refund of the amounts wrongfully collected.[4] We express no opinion whether the state may surcharge other carriers because that issue is not appropriately before us in the context of this case.

VI

In Docket No. 195564, plaintiff advances several issues relating to the court's denial of plaintiff's motion for attorney fees pursuant to 42 USC 1988. Although the court did not explicitly rule on the merits of plaintiff's claim under 42 USC 1983, we conclude that the denial of attorney fees was appropriate because the § 1983 claim was not viable against either the state agencies or the state officials.

Case law indicates plaintiff could not prevail in a § 1983 action against the state agencies. Section 1983 applies to "person[s]," and the United States Supreme Court has held that a state agency is not a "person" for the purposes of § 1983. *Hardges v Dep't of Social Services*, 201 Mich App 24, 27; 506 NW2d 532 (1993), citing *Howlett v Rose*, 496 US 356; 110 S Ct 2430; 110 L Ed 2d 332 (1990), and *Will v Michigan Dep't of State Police*, 491 US 58, 66; 109 S Ct 2304; 105 L Ed 2d 45 (1989).

Plaintiff was not entitled to relief on the basis of its § 1983 claim brought against the state officials acting in their official capacity. Section 1983 claims seeking prospective injunctive relief may be brought against

---

[4] The holding in *McKesson* is limited to situations in which a state places a taxpayer under duress to pay tax promptly when due and limits the taxpayer to challenging the tax after payment. The state does not suggest that plaintiff was given the opportunity to challenge the fees before payment and does not suggest that a distinction should be drawn in this context between the payment of fees and taxes.

state officials acting in an official capacity. *Will,*
*supra* at 71, n 10; *Hardges, supra.* However, the
United States Supreme Court has held that a state
court cannot grant injunctive or declaratory relief
under § 1983 in state tax cases when an adequate
legal remedy exists. *Nat'l Private Truck Council, Inc*
*v Oklahoma Tax Comm,* 515 US 582; 115 S Ct 2351;
132 L Ed 2d 509 (1995).

We are not persuaded by plaintiff's attempt to dis-
tinguish *Nat'l Private Truck* on the basis that the fees
in this case were collected under federal law pursu-
ant to a system implemented by the ICC. Plaintiff con-
tends the principles of comity and federal deference
to state authorities underlying the decision in *Nat'l*
*Private Truck* are not relevant in this case. However,
federal law does not require that states charge the
fees, but rather sets forth the method and limits on
states that choose to collect the fees. Plaintiff's con-
tention, "No issues of state tax law or state tax
administration are here involved," is disingenuous and
does not provide a meritorious basis for distinguish-
ing *Nat'l Private Truck.*

We also disagree with plaintiff's suggestion that the
Supreme Court intended its decision in *Nat'l Private*
*Truck* to be limited to taxes and therefore not apply
to fees. On the basis of the principles of comity and
federalism, the Supreme Court concluded that Con-
gress did not intend § 1983 claims to be brought in
state tax cases when an adequate state remedy is
available. Those principles apply equally well when
the revenue collection is in the form of a fee.

VII

The Court of Claims properly granted plaintiff's motion for summary disposition. The state was precluded from collecting fees from plaintiff in excess of the amount charged or collected for the 1991 registration year. Plaintiff is entitled to a refund of the amount improperly collected. We also affirm the Court of Claims' denial of plaintiff's motion for attorney fees pursuant to § 1988 because plaintiff had no viable § 1983 claim against any of the defendants.

Affirmed.

GRIFFIN, P.J., concurred.

O'CONNELL, J. (*concurring in part and dissenting in part.*) I respectfully dissent from part II of the majority opinion. I find no ambiguity in the statutory provision in dispute and accordingly would instruct the Court of Claims to apply the statutory language according to its plain meaning and not according to the ICC's strained construction.

The primary goal of statutory interpretation is to ascertain and give effect to legislative purpose. *Haworth, Inc v Wickes Mfg Co*, 210 Mich App 222, 227; 532 NW2d 903 (1995). The language of the statute itself is the primary indicator of legislative intent. *Folands Jewelry Brokers, Inc v City of Warren*, 210 Mich App 304, 307; 532 NW2d 920 (1995). "If the plain and ordinary meaning of the statute is clear, judicial construction is normally neither necessary nor permitted." *Dep't of Transportation v Thrasher*, 196 Mich App 320, 323; 493 NW2d 457 (1992), aff'd 446 Mich 61; 521 NW2d 214 (1994).

The pertinent language in 49 USC 11506(c)(2)(B)(iv)(III) provides for establishment of a fee sys-

tem that "will result in a fee for each participating State that is equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991." The majority reasons that this language calls for identifying a "pertinent period" ending November 15, 1991, but that it reveals no congressional intent concerning when this period begins. The majority then resolves this supposed ambiguity by concluding that the provision refers to fees charged for the registration year that includes November 15, 1991. However, this construction disregards the word "collected," and broadens the specific reference, "as of November 15, 1991," to indicate the whole registration year that happens to include November 15, 1991. This distortion of the plain wording of the statute is unnecessary and inappropriate. Legislative intent "is to be found in the terms and arrangement of the statute without straining or refinement, and the expressions used are to be taken in their natural and ordinary sense." *Gross v General Motors Corp*, 448 Mich 147, 160; 528 NW2d 707 (1995). The ambiguity that the majority finds is the result of the majority's failure to accept the statutory wording at face value. When a statute is clear on its face, judicial construction is unnecessary and inappropriate. *Thrasher, supra.*

As the majority states, it was the intent of Congress to "freeze fees at the level as of November 15, 1991." To determine the particulars of that intent, I would restore "collected" as the companion of "charged," and respect the specificity of "November 15, 1991." A court should presume that every word has some meaning and avoid rendering any word nugatory. *Tiger Stadium Fan Club, Inc v Governor*, 217 Mich App 439, 457; 553 NW2d 7 (1996). Accordingly, I

would read "fee . . . that such State collected or charged as of November 15, 1991" as fixing fee levels by reference to what the state charged on, or had actually collected by, November 15, 1991.

The statute does not refer to a "period" ending on November 15, but simply to that specific date. It does not refer only to the fee structure in place at the specified time, but to fees "collected or charged" at that time, identifying fees payable to the state, or already paid to the state (for whatever the reason), as establishing the level at which the fees are to be frozen. The words "as of" in reference to a specific date clearly refer to the status quo in place on that date. Thus, the congressional intent to freeze fees at the rates "collected or charged as of November 15, 1991" plainly recognizes for this purpose both the rates actually charged and those according to which fees were actually collected on that date.

Accordingly, because the state had collected plaintiff's fees as envisioned for the 1992 registration year "as of November 15, 1991," 49 USC 11506(c)(2)(B) (iv)(III), by its plain terms, allows the state to continue to assess plaintiff's fees according to the new scheme under which plaintiff had tendered payment by November 15, 1991.

At stake here is the state's interest in collecting higher fees from plaintiff in accordance with recent changes in the state's regulatory scheme, and plaintiff's interest in avoiding those fee increases and continuing to operate under the old scheme. Each party argues that the other stands to receive a windfall if the other's interpretation of the statutory language at issue is adopted. That statutes have the effect, intentionally or not, of benefiting some and burdening

others is not a matter of dispute, and the Intermodal Surface Transportation Efficiency Act is no exception. Under any interpretation of 49 USC 11506(c)(2)(B) (iv)(III), someone will win and someone will lose. Although the state's reading of the statute to cause plaintiff to have to continue to pay much higher fees simply because plaintiff chose to pay 1992 fees before November 15, 1991, may seem a harsh result, the result is equally harsh if the state is obliged to forgo receiving the higher revenues to which its own laws entitle it simply because the federal statute articulated a date of late 1991 instead of early 1992. For these reasons, I would avoid any concern for who benefits, or who gets burdened, from 49 USC 11506(c)(2)(B)(iv)(III) and simply give effect to its plain language.

Although I express no disagreement with the reasoning of part V of the majority opinion, I do not join in that part because it concerns the relief to which plaintiff is entitled, where under my reading of the statute in question plaintiff is not entitled to any relief. I concur with parts III, IV, and VI.