*24 Weaver, C.J.
This case presents an issue of statutory interpretation. Plaintiff, Yellow Freight System, Inc., alleges that defendants collected registration fees in excess of the amount allowed under the 1991 Intermodal Surface Transportation Efficiency Act (istea), 49 USC 11506, which restricts a state’s registration fees to an amount “equal to the fee . . . that such state collected or charged as of November 15, 1991,” 49 USC 11506(c) (2) (B) (iv) (III). Specifically, plaintiff contends that in determining the amount of the fee charged or collected on November 15, 1991, one must consider the effect that any then existing reciprocity agreements had on the fees.
We reject plaintiff’s claims and hold that in determining the “fee . . . collected or charged” under 49 USC 11506(c)(2)(B)(iv)(III), Michigan’s reciprocity agreements are irrelevant. We reverse the Court of Appeals decision affirming the Court of Claims order for. summary disposition in favor of plaintiff and remand this case to the Court of Claims for further proceedings consistent with this opinion.
i
Congress has' the power to “regulate Commerce . . . among the several States” and “[t]o make all Laws which shall be necessary and proper for carrying into Execution” that power to regulate commerce. US Const, art I, § 8. Under the Commerce Clause, states can impose significant regulatory burdens on interstate motor carriers only when authorized to do so by Congress. Michigan Pub Utility Comm, v Duke, 266 US 570, 577; 45 S Ct 191; 69 L Ed 445 (1925). Over the years Congress has authorized the states to require registration of interstate motor earners, sub *25 ject to the supervision of the Interstate Commerce Commission. See Motor Carrier Act of 1935, PL 74-265, 49 USC 301 et seq. In 1991, Congress passed the istea,[1] which directed the Interstate Commerce Commission (icc) to restructure the then existing regulations governing vehicle registration and registration fees. 49 USC 11506. As a result, the ICC issued the “single state” registration system (SSRS) in 1993, 49 CFR 1023.[2]
A brief overview of the previous interstate motor carrier registration system is helpful in understanding the dispute now before this Court. Before 1991, states could require interstate motor carriers to annually register and pay fees on each vehicle that operated within its borders. Thirty-nine states, including Michigan, elected to participate in a “bingo card” system.[3] Under the “bingo card” system interstate motor carriers attached a “bingo card” to each of their motor vehicles. States through which the vehicle traveled then issued each vehicle a registration “stamp” which was placed in a designated area on the bingo card. Participating states were allowed to charge no more than $10 per stamp.
While operating under the prior “bingo card” registration system, some states entered into reciprocity agreements, under which a state would discount or waive the registration fee for carriers based in the *26 other’s state. The motor carrier’s principal place of business was most commonly used as the basis for determining reciprocity. Michigan, however, initially based its reciprocity agreements on the state in which the vehicle was “base-plated,” i.e., where it was registered or license-plated.[4]
Seeking to “benefit the interstate carriers by eliminating unnecessary compliance burdens” and “to preserve revenues for the states which had participated in the bingo program,” Congress replaced the old system by enacting the istea.[5] The ssrs was intended to serve as the sole avenue for state registration of interstate carriers.[6] Nat'l Ass’n of Regulatory Utility Comm’rs v Interstate Commerce Comm, 309 US App DC 325; 41 F3d 721 (1994). Under the ssrs a motor carrier registers annually with only one state. This “registration state” is responsible for collecting the per-vehicle fees and distributing them to any participating states through which the carrier runs its motor vehicles. 49 USC 11506(c)(2)(A)(iii).
The section of the istea at issue in the present case is subsection 11506(c)(2)(B)(iv). It provides that each state “shall establish a fee system” that “result[s] in a fee for each participating state that is equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991 . . . .”
In 1991, before the implementation of the ssrs, the Michigan Public Service Commission (mpsc) altered *27 its reciprocity agreements. The mpsc adopted the more common “place of business” method of determining reciprocity, instead of the “base-plated” system that the mpsc had been using. This change was scheduled to become effective in February 1992. The MPSC mailed renewal applications reflecting this change to all interstate motor carriers, including the plaintiff, in September 1991. Plaintiff paid its 1992 fees[7] in September of 1991, under protest. Subsequently, plaintiff instituted this litigation.
Plaintiff contended that Michigan could not alter its reciprocity agreements, arguing that under the federal statute those agreements were frozen at their November 15, 1991, levels. Ruling on cross motion, the Court of Claims agreed with plaintiff and granted its motion, in part, for summary disposition.[8] In a two-to-one decision, the Court of Appeals affirmed the Court of Claims ruling. 231 Mich App 194; 585 NW2d 762 (1998). This Court granted leave to appeal, 461 Mich 1009 (2000).
ii
There is no dispute that 49 USC 11506(c)(2)(B)(iv)(III) froze the registration fees that *28 a state can charge as of November 15, 1991. The parties dispute the proper interpretation of a key phrase in that section of the istea: “equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991.” The fundamental question before us is whether Michigan’s reciprocity agreements should be considered in determining what fees were charged or collected as of November 15, 1991. We conclude that under the plain language of the statute, reciprocity agreements are not relevant in making that determination.
A
This is an issue of first impression for this Court; nor have any other state courts addressed it. The only court that has considered it is the District of Columbia Circuit Court of Appeals, Nat'l Ass’n of Regulatory Utility Comm’rs, supra. That court followed the ice’s decision[9] to ban states from charging registration fees in excess of preexisting reciprocal discounts, saying:
*29 [W]e think the Commission was correct in concluding that the plain language of the statute precludes petitioners’ interpretation. It does not matter whether Congress actually focused on the reciprocal discount practice or even was aware of it. Nor is it of any significance that the Commission initially misread the statute; that is what comment periods are for. Id. at 729.
We are not bound to follow that decision,[10] and, for the reasons given below, we do not agree with the federal court’s decision to defer to the ice’s interpretation of the istea.
B
Plaintiff contends that in interpreting the istea we must give deference to the ice’s interpretation. Because the issue is the interpretation of a federal statute and the deference due a federal agency’s construction of that statute, we will apply the rules of construction set out by the federal judiciary.[11] The *30 seminal case is Chevron, USA, Inc v Natural Resources Defense Council, Inc, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984). There the United States Supreme Court established that a court must first determine whether the statute’s meaning is clear; if so, then the court must apply the statute as written. If the statute is ambiguous, then the court must give deference to the agency’s interpretation.
When a court reviews an agency’s construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute. Id. at 842-843.
Here we find that the plain meaning of the terms of the istea is clear, and we apply the statute as written. Because we find that the statute is not ambiguous,[12] we need not proceed to the second step of Chevron, *31 supra, and we do not reach the agency’s interpretation.
c
The question before us is whether any then-existing reciprocity agreements should be considered when determining what fee the state charged or collected as of November 15, 1991. The ISTEA itself refers only to the fee collected or charged, and contains no reference to reciprocity agreements. 49 USC 11504(c)(2)(B)(iv)(III) directs the ICC to “establish a fee system” that “result[s] in a fee for each participating State that is equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991.” The new “fee system” is based not on the fees collected from one individual company, but on the fee system that the state had in place on November 15, 1991. We must look not at the fees paid by plaintiff in any given year, but at the generic fee Michigan charged or collected from carriers as of November 15, 1991.
To determine what registration fee Michigan charged on November 15, 1991, we examine MCL 478.7(4) in the Motor Carrier Act. Since 1989 that statute has provided for a fee of $10 to be charged for those motor carrier vehicles operating in Michigan and licensed in another state or province of Canada:
The annual fee levied on each interstate or foreign motor carrier vehicle operated in this state and licensed in another state or province of Canada shall be $10.00.
*32 The same statute, MCL 478.7(4), also gives the commission the ability to waive the $10 fee under certain circumstances:
The commission may enter into a reciprocal agreement with a state or province of Canada that does not charge vehicles licensed in this state economic regulatory fees or taxes and may waive the fee required under this subsection.
Thus, under MCL 478.7(4), the fee charged as of November 15, 1991, was $10. While that fee may be waived, and thus not “charged or collected,” for a particular carrier under a reciprocity agreement, such voluntary agreements to waive the fee that happen to benefit a particular carrier do not affect the generic per vehicle fee in place on November 15, 1991. As stated, the clear focus of 49 USC 11506(c)(2)(B)(iv)(III) is on the generic “fee” that Michigan charged or collected as of November 15, 1991, and not on whether that fee was charged to or collected from a particular carrier.
The ice’s position that “participating States must consider fees charged or collected under reciprocity agreements when determining the fees charged or collected as of Nov 15, 1991, as required by § 11506(c)(2)(B)(iv),”[13] added a concept not within the express language of the statute. It added consideration of voluntary agreements between the states to waive or reduce the fees imposed. It is not for the ICC, or this Court, to insert words into the statute.
*33 m
We hold that Michigan’s reciprocity agreements are not relevant in determining what fee was “charged or collected” as of November 15, 1991. The lower courts erred in granting summary disposition for plaintiffs. We reverse the Court of Appeals decision, and remand this case to the Court of Claims for further proceedings consistent with this opinion.
Corrigan, C.J., and Taylor, Young, and Markman, JJ., concurred with Weaver, J.

 Provisions similar to those in this section are now contained in 49 USC 14504.

 This was redesignated in 1996 as 49 CFR 367.

 The “bingo card” system served three main purposes: (1) to make it easier to determine whether a specific vehicle had been registered by simply looking at the “bingo card,” (2) to ensure compliance by interstate motor carriers to register all vehicles in operation, and (3) to prevent carriers from operating uninsured vehicles.

 In other words, Michigan would waive its registration fee for vehicles base-plated in a state that waived its fee for vehicles that were base-plated in Michigan.

 H R Conf Rep No 102-404, 102nd Cong, 1st Sess 437 (1991), reprinted in 1991 U S Code Cong & Admin News, 1526, 1679, 1817.

 Participation in the SSRS was limited to the thirty-nine states that had elected to participate in the “bingo card” program. 49 USC 11506(c)(2)(D).

 At that time plaintiffs principal place of business was in Kansas, and it had 3,730 vehicles base-plated in Illinois and Indiana. Under Michigan’s old reciprocity agreements, Michigan’s fees for those 3,730 vehicles base-plated in Illinois and Indiana would have been waived. However, after Michigan changed its method for determining reciprocity to one based on a company’s principal place of business, plaintiff was required to pay a $10 vehicle registration fee for each of the 3,730 vehicles. Thus, rather than paying nothing under the old reciprocity method, plaintiff was required to pay $37,300 annually under Michigan’s new system.

 Plaintiff’s complaint also sought attorney fees under 42 USC 1988. The Court of Claims did not grant this relief, and plaintiff has not appealed that decision to this Court.

 The ICC has taken varying positions on this issue. In its Advance Notice of Proposed Rulemaking, 57 Fed Reg 20,072 (1992), and its Notice of Proposed Rulemaking, 58 Fed Reg 5951 (1993), the ICC found that the reciprocity agreements were made voluntarily, and that there was no good reason for the ice’s involvement in them. The ICC had noted that “it might place a heavy administrative burden on a registration State were we to require that it collect from different carriers different fees from the same State depending on the various reciprocal agreements negotiated by the various states in which each carrier operates.” 9 ICC2d 610, 617 (1993).
However, the ICC subsequently reversed its position, and now says “we have concluded that participating States must consider fees charged or collected under reciprocity agreements when determining the fees charged or collected as of Nov 15, 1991, as required by § 11506(c)(2)(B)(iv).” Single State Insurance Registration Exparte No MC-100 (Sub-No 6), 9 ICC2d 610, 618-619 (1993).

 Michigan adheres to the rule that a state court is bound by the authoritative holdings of federal courts upon federal questions, including interpretations of federal statutes. See Bement v Grand Rapids & Indiana R Co, 194 Mich 64; 160 NW 424 (1916), and In re Hopps Estate, 324 Mich 256; 36 NW2d 908 (1949). However, where there is no United States Supreme Court decision upon the interpretation in question, the lower federal courts’ decisions, while entitled to respectful consideration, are not binding upon this Court. See Winger v Grand Trunk W R Co, 210 Mich 100, 117; 177 NW 273 (1920), Schueler v Weintrob, 360 Mich 621; 105 NW2d 42 (1960), and 21 CJS, Courts, § 159, pp 195-197.

 This Court has not previously determined what deference the courts of this state owe to a federal agency’s interpretation of a federal statute. However, in that circumstance the Court of Appeals has applied the federal standards of deference as set out in Chevron, supra at 2778. See Walker v Johnson & Johnson Vision Products, Inc, 217 Mich App 705, 713; 552 NW2d 679 (1996), Gibbs v General Motors Corp, 134 Mich App 429, 432; 351 NW2d 315 (1984), and 231 Mich App 200. This is also the approach taken by several other state courts. See for example: Totemoff v State, 905 P2d 954, 967 (Alas, 1995), Delorme v North Dakota Dep’t of Human Services, 492 NW2d 585, 587, n 2 (ND, 1992), Rodriguez v *30 Perales, 86 NY2d 361, 367; 657 NE2d 247; 633 NYS2d 252 (1995), and Bell Atlantic Mobile, Inc v Dep’t of Public Utility Control, 253 Conn 453, 470; 754 A2d 128 (2000).

 The dissent contends that the statute is ambiguous, asserting that this is demonstrated by “the several interpretations of its wording advanced by the parties.” If the parties’ conflicting interpretations were the measure of a statute’s ambiguity, then almost every statute litigated would be deemed ambiguous. A statute is not ambiguous because it requires careful attention and analysis.

 Single State Insurance Registration Exparte No MC-100 (Sub-No 6), 9 ICC2d 610 (1993).