Kelly, J.

(dissenting).

The issue in this case is whether the Employee Retirement Income Security Act (erisa)[1] prevents the State Treasurer from implementing its restitutive scheme under the State Correctional Facility Reimbursement Act (scfra). MCL 800.401 et seq. The restitutive scheme in this case has as its object to require defendant, an inmate at a state correctional facility, to reimburse the state for the cost of his incarceration. Through court order, defendant’s former employer was directed to send defendant’s pension checks to defendant’s prison account rather than to his credit union. The warden was made receiver for the checks and empowered to deposit them in the account, then disburse part of the proceeds to the state.
I conclude that the scheme effects an assignment of defendant’s pension benefits under erisa, violating that act’s antialienation provision. 29 USC 1056(d)(1). Consequently, I would affirm the decision of the Court of Appeals.
*161 I. factual & procedural background
After the circuit court implemented the restitutive scheme, defendant petitioned the Court of Appeals, which denied leave to appeal. We remanded to that Court as on leave granted. On remand, the Court of Appeals reversed and held that the trial court orders violate ERISA’s antialienation provision because they constitute an assignment of defendant’s pension benefits. 249 Mich App 107; 640 NW2d 888 (2001). The decision was grounded in the United States District Court opinion in State Treasurer v Baugh, 986 F Supp 1074 (ED Mich, 1997).
The majority now reverses the decision of the Court of Appeals and holds that the trial court orders are not an assignment under the provisions of erisa.
n. discussion
We interpret a federal statute in such manner as to give effect to the purpose for which Congress drafted it. If the United States Supreme Court has construed the language, we defer to its interpretations. Moreover, we defer to any reasonable construction given the statute by a federal agency empowered by Congress to interpret it. Yellow Transportation, Inc v Michigan, 537 US 36, 44-45; 123 S Ct 371, 377; 154 L Ed 2d 377 (2002), citing Chevron USA Inc v Natural Resources Defense Council, Inc, 467 US 837, 842-843; 104 S Ct 2778; 81 L Ed 2d 694 (1984); Barnhart v Walton, 535 US 212, 217-218; 122 S Ct 1265; 152 L Ed 2d 330 (2002). In addition, although they are not binding on us, we give respectful consideration to the decisions of lower federal courts. Yellow Freight Sys, Inc *162 v Michigan, 464 Mich 21, 29 n 10; 627 NW2d 236 (2001).
A. DEFINING ERISA’S ANTIALIENATION PROVISION
Erisa expansively regulates employee benefit programs. Shaw v Delta Air Lines, Inc, 463 US 85, 90; 103 S Ct 2890; 77 L Ed 2d 490 (1983); Baugh, 986 F Supp 1076 (1997). In so doing, it preempts “any and all state laws” that “relate to” a program covered by erisa. 29 USC 1144(a).
1. FEDERAL INTERPRETATION OF ERISA’S ANTIALIENATION PROVISION
Erisa subsection 206(d)(1), 29 USC 1056(d)(1), requires that “[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated.” The Secretary of the Treasury has defined “assignment” as:
(ii) Any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary. [26 CFR 1.401(a)-13(c)(l).]
The United States Supreme Court has held that garnishment of benefits from a covered plan constitutes an assignment for the purpose of subsection 206(d)(1)[2] Guidry v Sheet Metal Workers Fund, 493 *163 US 365, 371-372; 110 S Ct 680; 107 L Ed 2d 782 (1990) (Guidry I), citing Mackey v Lanier Collection Agency & Service, Inc, 486 US 825, 836-837; 108 S Ct 2182; 100 L Ed 2d 836 (1988); see also United Metal Products Corp v Nat’l Bank of Detroit, 811 F2d 297 (CA 6, 1987). Thus, in order to avoid the prohibition on assignments in subsection 206(d)(1), any court ordered remedy that relates to an erisa plan must be meaningfully distinct from a court ordered garnishment. Guidry I, 493 US 372. In Baugh, a federal district court in Michigan found no meaningful distinction between the restitutive scheme used by the plaintiff in this case and the garnishment plans invalidated in Guidry I and United Metal Products. 986 F Supp 1076-1078.
2. THE MAJORITY’S INTERPRETATION OF ERISA’S ANTIALIENATION PROVISION
The majority recognizes that this Court must defer to a federal agency’s interpretation of a federal statute. Ante at 148. Nonetheless, it fails to properly apply the definition of “assignment” expounded by the United States Treasury Department. Instead, it concludes that there is no meaningful distinction between the definition of “assignment” in the treasury regulation and other accepted legal meanings of the term.
After reviewing some legal definitions,[3] the majority concludes that the treasury regulation “plainly contemplates a transfer of the interest to another person, *164 i.e., a person other than the beneficiary himself” Ante at 150 (emphasis in original). Thus, it reasons, “[a] property interest is assigned or alienated when it has been transferred to another person.” Ante at 151. Applying this understanding, the majority concludes that plaintiffs restitutive scheme does not effect an assignment because the warden never obtains title to or an interest in defendant’s pension benefits. Ante at 151.
The majority asserts that there are two bases for its conclusion that the trial court orders do not constitute an assignment or alienation: (1) the court ordered defendant to receive benefits at the prison, which is his current address, and (2) title to the benefits does not pass under the orders until after defendant receives them in his prison account. However, as I will show, these conclusions rest on a misunderstanding of the treasury regulation.
B. APPLICATION
1. GARNISHMENT
The majority claims that Guidry II[4] and Wright v Riveland[5] support its conclusions that plaintiff’s restitutive scheme does not violate ERISA’s antialienation provision. In Guidry II, the United States Court of Appeals for the Tenth Circuit held that subsection 206(d)(1) does not apply to benefits once a beneficiary receives them. Guidry II, 10 F3d 710. Accordingly, it found that the defendant’s creditors could *165 garnish the defendant’s pension benefits that he had voluntarily deposited into his personal bank account. Id.
Wright concerned a prison inmate in the state of Washington. A Washington statute provided:
When an inmate . . . receives any funds in addition to his or her wages or gratuities, the additional funds shall be subject to the deductions in ROW 72.09.111(l)(a). . . . [Wash Rev Code 72.09.480(2).]
The Washington Department of Corrections took thirty-five percent of the defendant’s pension payments pursuant to Wash Rev Code 72.09.111. The United States Court of Appeals for the Ninth Circuit found no violation of ERISA because the department had obtained control over the prisoner’s benefits only after the prisoner had received them. Wright, 219 F3d 921.
These cases are inapplicable here. The restitutive programs at issue in Wright and Guidry II lack two fundamental components of plaintiff’s scheme. First, no one was made a receiver of the defendants’ benefits before they were deposited into the defendants’ accounts.[6] Second, the courts did not order the defen *166 dants’ benefit plans to deliver the defendants’ funds into specified accounts.
The majority reads the trial court orders in this case as requiring that: “(1) defendant receive his monthly pension payments at his prison address and (2) the warden distribute the funds after their deposit in defendant’s prison account.” Ante at 148. However, the majority fails to acknowledge that one of the orders does much more. It requires General Motors to disburse defendant’s pension benefits to his prison address in the event defendant refuses to request it.[7] In fact, without awaiting defendant’s compliance, on the same day the primary order was entered, the trial court entered a second order directing:
*167 1. General Motors shall send all pension proceeds payable to Thomas K. Abbott ... to Thomas K. Abbott’s new address of record ....
These orders implicate a factor overlooked by the majority: subsection 206(d)(1) prohibits any indirect, as well as direct, assignment of benefits. The orders’ provisions making the warden receiver for defendant of his pension benefits and directing General Motors to send defendant’s pension checks to the warden make them an indirect assignment.
Contrary to the majority’s assertion, the fact that the warden is made receiver of defendant’s benefits is dispositive. According to the majority’s own analysis, “ . . property in the possession of a receiver is in the
custody of the law, and the receiver’s possession is the possession of the court for the benefit of those ultimately entitled.’ ” Ante at 153 n 10, quoting 19 Michigan Law and Practice, Receivers, § 41, p 382. The majority claims that this definition of a receivership takes this case out of the reach of erisa’s prohibition on assignments.
At a minimum, plaintiff’s restitutive scheme must be meaningfully distinct from an order of garnishment. Guidry I, supra. A constructive trust is not meaningfully distinct from an order of garnishment. Id.
We have held that “ ‘ “[t]rusts,” in the broadest sense of the definition, embrace, not only technical trusts, but also obligations arising from numerous fiduciary relationships, such as agents, partners, bailees, et cetera.’ ” Fox v Greene, 289 Mich 179, 183; 286 NW 203 (1939), quoting Rothschild v Dickinson, 169 Mich 200; 134 NW 1035 (1912). Thus, a trustee is “ ‘a person in whom some estate, interest, or power in *168 or affecting property of any description is vested for the benefit of another.’ ” Equitable Trust Co v Milton Realty Co, 263 Mich 673, 676; 249 NW 30 (1933), quoting Jones v Byrne, 149 F 457, 463 (CC WD Ark, 1906) (emphasis supplied). We have also held that possession and control are fundamental incidents of ownership. Orel v Uni-Rak Sales Co, Inc, 454 Mich 564, 568; 563 NW2d 241 (1997); Merritt v Nickelson, 407 Mich 544, 552; 287 NW2d 178 (1980); Rassner v Fed Collateral Society, Inc, 299 Mich 206, 213; 300 NW 45 (1941); James S Holden Co v Connor, 257 Mich 580, 592-594; 241 NW 915 (1932) (and cases cited therein); Brown v Fifield, 4 Mich 322, 327, 328 (1856).
Under the trial court’s orders, defendant is never allowed to exercise control over his pension benefits.[8] The majority finds this fact irrelevant, but it is the determining factor that renders the trial court orders a violation of subsection 206(d)(1). Transferring possession and control of defendant’s pension benefits to the warden before the benefits are deposited in defendant’s prison account strips defendant of the ability to exercise the interests he has in his benefits.
Plaintiff’s restitutive scheme is no less onerous than the constructive trust arrangement or garnishment struck down in Guidry I and United Metal Products.[9] The practical effect of the trial court *169 orders is that the warden is able to control defendant’s benefits before defendant receives them. The circuit court, on behalf of the Department of Corrections, obtained control of the benefits while they were still in the possession of defendant’s employer, a third party. This is a garnishment and is prohibited by erisa’s antialienation provision.[10]
2. ASSIGNMENT OF A RIGHT ENFORCEABLE AGAINST THE PLAN
Although I find that plaintiff’s restitutive scheme is not meaningfully distinct from an order of garnishment, the finding is not necessary to my ultimate conclusion that the scheme violates erisa. Erisa’s prohibition on alienation is not limited to payments. Erisa also prohibits alienation of any right, separate from the right to payment, that is enforceable against the plan.
Under the Uniform Commercial Code, defendant never becomes a holder of the instruments used to deliver his benefits. MCL 440.1201(20). Rather, the warden acquires a right enforceable against the plan when he takes control of defendant’s pension check. *170 This is because the court orders give the warden the authority to enforce the withdrawal of funds from the plan. MCL 440.3301(ii).
This transfer of authority constitutes an “assignment” under the United States Department of Treasury’s definition of the term. It is irrelevant that, afterward, the warden deposits the funds into defendant’s prison account. Before the funds reach the account, rights that defendant is entitled to enforce against the plan are assigned to the warden in contravention of erisa. See, generally, Shinehouse v Guerin, 20 E B C 1302 (ED Pa, 1996), aff'd 107 F3d 8 (CA 3, 1997).
CONCLUSION
Plaintiff’s restitutive scheme accomplishes by indirection what it cannot do by direction. It is an indirect assignment of pension benefits that is prohibited by erisa. In Guidry I, the United States Supreme Court held that a restitutive scheme could not overcome Congress’s express intent to protect employee retirement benefits. This was true even where the employee’s embezzlement had caused harm to the plan’s beneficiaries.
In United Metal Products, the United States Court of Appeals for the Sixth Circuit held that there was no exception to ERISA’s antialienation provision for fraud or criminal conduct. In Baugh, the United States District Court for the Eastern District of Michigan, relying on Guidry I and United Metal Products, concluded that plaintiff’s restitutive scheme constituted an assignment under subsection 206(d)(1).
In each case, the court flatly refuted the contention that courts may carve out exceptions to erisa’s *171 antialienation provision when it would serve public policy. Yet the majority carves out an exception by this decision.
The trial court’s orders transfer a portion of defendant’s pension benefits from the pension plan to the state. The orders accomplish this by acting on defendant’s benefits before he receives them. That the orders run the pension benefits through defendant’s prison account is of no legal significance. Defendant at no time has possession or receipt of the benefits. They might as well be run through the warden’s account. As receiver for the benefits, the warden controls them until he distributes them according to the orders. The provision requiring the funds to be placed in defendant’s prison account is a thinly veiled device to defeat the provisions of ERISA.
Neither plaintiff nor the majority has provided a meaningful distinction between the plaintiff’s restitutive scheme and an order of garnishment. Moreover, the scheme goes too far because, rather than constraining itself to acting on defendant’s benefits themselves, it usurps a right only defendant is entitled to enforce against the plan. Consequently, the scheme is prohibited by ERISA.
I would affirm the decision of the Court of Appeals.
Cavanagh and Markman, JJ., concurred with Kelly, J.

 29 USC 1001 et seq.

 A garnishment is a legal device that allows a person to obtain control over the property of another while it is in the hands of a third party. See Black’s Law Dictionary (7th ed); Ballentine’s Law Dictionary (3d ed). See, generally, MCL 600.4011; Ward v Detroit Automobile Inter-Ins Exch, 115 *163 Mich App 30, 35; 320 NW2d 280 (1982), citing Johnson v Kramer Bros Freight Lines, Inc, 357 Mich 254; 98 NW2d 586 (1959).

 Ante at 150-151 n 8.

 Guidry v Sheet Metal Workers Fund, 10 F3d 700 (CA 10, 1993) (Guidry II), mod on reh 39 F3d 1078 (CA 10, 1994) (Guidry III).

 219 F3d 905 (CA 9, 2000).

 The majority argues that the warden is not a receiver because he does not manage or exercise control over defendant’s pension funds. Ante at 152-153 n 10. I disagree with this characterization of the warden’s role in this scheme.
Random House Webster’s College Dictionary (2000) states that “manage” means: “to take charge of; supervise.” To “control” is “to exercise restraint or direction over.” Id. The trial court orders charge the warden with the responsibility of supervising and directing the deposit of defendant’s pension benefits. Thus, it is evident that the warden retains these characteristics of a receiver.
Moreover, the warden also fulfills the ultimate function of a receiver. In his capacity as receiver, he collects defendant’s pension benefits to ensure that they remain available to satisfy the diverse claims on them created by *166 this litigation. If tins assurance were not the purpose of the scheme, I see no reason why plaintiff would not simply attach the funds after they were deposited into defendant’s credit union account. Although we are not bound by the trial court’s characterization of the warden’s function, we should not abandon the dictates of common sense in evaluating that function.

 A March 10, 1997 order states:
* *
3. Defendant Thomas K. Abbott shall immediately direct General Motors Corporation, it’s [sic] subsidiary or designee, to cause any pension payments due Defendant Thomas K. Abbott to be made payable to “[defendant]” at: prison address, or Thomas K. Abbott’s then current prison address. If defendant should refuse to so direct, this order shall be treated as the direction of the defendant to General Motors that the pension payments shall be made as directed above. Payments shall be made in this manner until Defendant Thomas K. Abbott is released from the physical custody of the Department of Corrections, or until further order of this Court.
4. This Court shall issue a separate Order directing General Motors to distribute the funds as described in paragraph 3 above should defendant Thomas K. Abbott refuse, or for any other reason fail, to comply with the provisions of paragraphs 3 above.

 The first order directs that:
5. Upon receipt of any such pension check, the Warden of the institution in the continuing capacity as receiver shall deposit the pension check into the account of Defendant Thomas K. Abbott .... The funds from that pension check shall be distributed as follows ....

 In her opinion, the Chief Justice asserts that “the overwhelming majority of federal courts have held [that] the funds are no longer pro *169 tected by erisa.” Ante at 159 n 14. However, the only federal court that has put thought into the specific issues presented in this case concluded that plaintiff’s restitutive scheme is an assignment. Baugh, supra. Therefore, all federal courts that have considered the issues presented in this case are in disagreement with the majority.

 The majority’s focus on transfer of title evidences its limited reading of the treasury regulation. As I have noted, and the majority recognizes, constructive trusts are prohibited by erisa’s antialienation provision. Guidry I, supra. However, title does not pass in a constructive trust. Rather, a constructive trust is a “ ‘formula through which the conscience of equity finds expression.’ ” Kent v Klein, 352 Mich 652, 656; 91 NW2d 11 (1958), quoting Beatty v Guggenhein Exploration Co, 225 NY 380, 386; 122 NE 378 (1919). It leaves title in the original holder but gives possession and control to another. Thus, the fact that title to defendant’s pension benefits does not pass to the warden does not distinguish this case from Guidry I.