YELLOW TRANSPORTATION, INC v STATE OF MICHIGAN
(ON REMAND)

Docket No. 194703. Submitted March 14, 2003, at Lansing. Decided July
22, 2003, at 9:05 A.M. Leave to appeal sought.

Yellow Freight System, Inc., an interstate motor carrier that in January 2002 became Yellow Transportation, Inc., brought an action in the Court of Claims against the state of Michigan and others, seeking partial refund of 1992 registration fees paid pursuant to MCL 478.7(4) on the basis that the fees exceeded the amount allowed by 49 USC 11506, inasmuch as, under then existing reciprocity agreements with other jurisdictions, it owed nothing and the federal statute froze those amounts at their November 15, 1991, levels. The Court of Claims, William E. Collette, J., granted summary disposition for the plaintiff. The Court of Appeals, GRIFFIN, P.J., and MCDONALD, J. (O'CONNELL, J., concurring in part and dissenting in part), affirmed. *Yellow Freight Sys, Inc v Michigan*, 231 Mich App 194 (1998). The defendants appealed. The Michigan Supreme Court reversed the judgment of the Court of Appeals and remanded the matter to the Court of Appeals, rejecting the plaintiff's claim that in determining the amount of the fee charged or collected under 49 USC 11506, which restricts a state's registration fees to an amount equal to the fee "that such state collected or charged as of November 15, 1991," one must consider the effect that any then existing reciprocity agreements had on the fees. The Supreme Court held that in determining the fee collected or charged under § 11506, Michigan's reciprocity agreements are irrelevant. The Supreme Court expressly rejected the interpretation of the relevant federal statute by the Interstate Commerce Commission, finding it contrary to the plain language of the statute. 464 Mich 21 (2001). The Supreme Court reasoned that Michigan's new fee system was based not on fees collected from one individual company, such as the plaintiff, in any given year, but on the generic fee system that the state had in place on November 15, 1991. The United States Supreme Court granted certiorari to determine whether the Michigan Supreme Court correctly held that only a state's generic fee is relevant. *Yellow Transportation, Inc v Michigan*, 534 US 1112 (2002). The United States Supreme Court reversed the judgment of the Michigan Supreme Court and remanded the matter to that

Court for further proceedings, holding that the Michigan Supreme Court had erred in holding that only a state's generic fee is relevant. The United States Supreme Court held that states may not renounce or modify a reciprocity agreement so as to alter any fee charged or collected as of the relevant date. The United States Supreme Court also held that the Interstate Commerce Commission's interpretation of the statute was reasonable and entitled to deference. 537 US 36 (2002). On remand from the United States Supreme Court, the Michigan Supreme Court vacated its prior opinion and remanded the matter to the Court of Appeals for reconsideration in light of the opinion of the United States Supreme Court and to reconsider other preserved arguments of the parties not directly addressed by the Michigan Supreme Court or the United States Supreme Court. 468 Mich 862 (2003).

On remand, the Court of Appeals *held*:

1. The interpretation of 49 USC 11506 by the Interstate Commerce Commission was reasonable. The agency acted reasonably in determining that the fees should be fixed at the level in effect for the 1991 registration year, regardless of whether a new basis for determining reciprocity had been announced for 1992 or whether certain carriers, such as the plaintiff, had paid fees for 1992 before November 15, 1991. The plaintiff's voluntary payment of fees not due and owing has no effect on the analysis by the Court of Appeals.

2. The state's pending petition to the Interstate Commerce Commission seeking a review of the commission's interpretation of 49 USC 11506 should not delay or affect the review of this matter by the Court of Appeals.

3. The judgment of the Court of Claims must be affirmed and the matter must be remanded to the Court of Claims for further proceedings consistent with the opinion of the Court of Appeals.

Affirmed and remanded.

O'CONNELL, J., dissenting, stated that the phrase "collected or charged as of November 15, 1991," is unambiguous. The plain wording of 49 USC 11506 fixes fee levels to those charged or, as in this case, collected as of November 15, 1991. The plaintiff is not entitled to relief because the fees at issue were at the level collected as of that date.

*Dean & Fulkerson* (by *John W. Bryant*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David A. Voges* and *Michael A. Nickerson*, Assistant Attorneys General, for the defendants.

ON REMAND

Before: Griffin, P.J., and Jansen and O'Connell, JJ.

Griffin, P.J. This case is before us for the second time. On remand, the Michigan Supreme Court has directed us to reconsider this matter in light of the United States Supreme Court decision in *Yellow Transportation, Inc v Michigan*, 537 US 36; 123 S Ct 371; 154 L Ed 2d 377 (2002) (*Yellow Transportation IV*), and to address certain other issues. 468 Mich 862 (2003). After doing so, we again affirm the judgment of the Court of Claims and remand for further proceedings consistent with this opinion.

I

The factual background of this case was summarized as follows by Judge McDonald writing for this Court on the initial appeal, *Yellow Freight Sys, Inc v Michigan*, 231 Mich App 194, 196-199; 585 NW2d 762 (1998) (*Yellow Freight II*):[1]

Plaintiff, an interstate commercial carrier, brought this action asserting that defendants (the state) had collected registration fees pursuant to MCL 478.7(4); MSA 22.565(1)(4) in excess of the amount allowed by federal

---

[1] On remand, Judge Jansen has been substituted for Judge McDonald, who sat on the original panel and has since retired.

law, specifically the single-state registration system (SSRS)
. . . .

In 1991, Congress passed the Intermodal Surface Transportation Efficiency Act (ISTEA), PL 102-240, which substantially amended 49 USC 11506[2] and directed the Interstate Commerce Commission (ICC) to reform the licensing and registration system existing in the states. The statute mandated the creation of a new system, the SSRS. The statute required the ICC to prescribe amendments of the previously existing standards and set forth certain requirements for the new standards.

The provision at issue, 49 USC 11506(c)(2)(B)(iv)(III), stated that the amended standards shall establish a fee system that "will result in a fee for each participating State that is equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991." The regulations promulgated by the ICC repeated the phrase "collected or charged as of November 15, 1991" without further explanation. See 49 CFR 1023.4(c)(4)(ii) (1995), later redesignated as 49 CFR 367.4(c)(4)(ii) (1996).

Because the statute essentially froze the fees a state could collect at the level existing as of November 15, 1991, the fee system in effect in this state at that time is pertinent to understanding the issues raised in this case. For the 1991 and 1992 registration years, the state collected fees by requiring interstate carriers to buy cab card stamps, also known as "bingo stamps," for each of the carrier's vehicles operating within the state. Each stamp cost $10. Pursuant to MCL 478.7(4); MSA 22.565(1)(4), the state had reciprocity agreements with certain other states so that each would waive the fees for vehicles from the other. The dispute arises in part because the state changed the method it used for determining reciprocity. For 1991, the state used the "base-plating system," which means that reciprocity was determined by the state of the vehicle's registration. In early 1991, the Public Service Commission (PSC) decided that it

---

[2] 49 USC 11506 was amended and recodified, and now appears at 49 USC 14504. Consistent with our prior opinion in *Yellow Freight II*, we will refer to the statute as 49 USC 11506.

would quit using the base-plating system. Instead, for the 1992 registration year, fees and reciprocity were determined by the carrier's principal place of business. The revised renewal applications were mailed to all interstate motor carriers in September 1991. Importantly, the 1992 fees to be "collected or charged" by the state were based on a calendar year and therefore were not due and owing until January 1, 1992.

The change in the method of determining reciprocity resulted in a substantial increase in the fees plaintiff owed the state for the 1992 registration year. Under the base-plating system used for 1991, plaintiff paid the state $50 for five vehicles that were "base-plated" in Oklahoma, but paid nothing for 3,730 vehicles "base-plated" in Illinois and Indiana, because those states did not charge fees for vehicles based in Michigan. However, plaintiff's principal place of business is Kansas, which had no fee waiver agreement with Michigan. Therefore, for 1992, plaintiff paid $10 a vehicle, a total of $ 37,850 under the new system. Plaintiff sent, and the state received, the fees for 1992 before November 15, 1991. Plaintiff voluntarily paid its 1992 fees early in order to prevent any disruption of its trucking activities at the commencement of the 1992 calendar year.

Plaintiff filed this action in 1995 in the Court of Claims seeking a refund of registration fees it had paid to the state pursuant to MCL 478.7(4).[3] Plaintiff alleged that, because the ISTEA froze fees at the level "collected or charged as of November 15, 1991," subsection 11506(c)(2)(B)(iv)(III), defendants could not

---

[3] This subsection provides:

The annual fee levied on each interstate or foreign motor carrier vehicle operated in this state and licensed in another state or province of Canada shall be $10.00. The [public service] commission may enter into a reciprocal agreement with a state or province of Canada that does not charge vehicles licensed in this state economic regulatory fees or taxes and may waive the fee required under this subsection.

levy a fee for registration year 1994[4] and beyond on plaintiff's vehicles registered in states with which Michigan had entered into reciprocity agreements as of that date. On cross-motions for summary disposition, the Court of Claims entered judgment for plaintiff, relying on the ICC's declaratory order in *American Trucking Associations—Petition for Declaratory Order—Single State Insurance Registration*, 9 ICC2d 1184, 1192, 1195 (1993), in which the agency held that the ISTEA had capped fees at the level "collected or charged" for registration year 1991, not those fees levied in advance for registration year 1992. *Yellow Freight System, Inc v Michigan*, Court of Claims Docket No. 95-015706-CM, March 13, 1996 (*Yellow Freight I*).

In a two-to-one decision, this Court affirmed, ruling that the ICC's interpretation of the ambiguous ISTEA fee-cap provision was reasonable and entitled to deference. *Yellow Freight II, supra* at 199-203. Judge O'CONNELL dissented from that part of the majority opinion that found the statutory provision to be ambiguous. *Id.* at 209-210 (O'CONNELL, J., concurring in part and dissenting in part). Judge O'CONNELL would have accorded no deference to "the ICC's strained construction" of 49 USC 11506(c)(2)(B)(iv)(III), and instead would have read the statute's plain language "as fixing fee levels by reference to what the state charged on, or had actually collected by, November 15, 1991." *Id.* at 209, 211.

The Michigan Supreme Court reversed and remanded to this Court, holding that "Michigan's reci-

---

[4] Although the ISTEA was enacted in 1991, the SSRS did not become effective until January 1, 1994. See 49 USC 11506(c)(3).

procity agreements are not relevant in determining what fee was 'charged or collected' as of November 15, 1991." *Yellow Freight Sys Inc v Michigan*, 464 Mich 21, 33; 627 NW2d 236 (2001) (*Yellow Freight III*). The Court expressly rejected the ICC's interpretation of the ISTEA, finding it to be contrary to the plain language of the statute, and, consequently, unworthy of deference. *Id.* at 29-31. The Court reasoned that Michigan's new fee system was based not on the fees collected from one individual company, such as Yellow Freight, in any given year, but on the generic fee system that the state had in place on November 15, 1991. *Id.* at 31.

The United States Supreme Court granted certiorari to determine whether the Michigan Supreme Court erred in holding that, for purposes of determining the fee that was "collected or charged as of November 15, 1991," only a state's generic fee is relevant. 534 US 1112; 122 S Ct 918; 151 L Ed 2d 883 (2002). In a decision delivered by Justice O'Connor, the United States Supreme Court held that the Michigan Supreme Court had erred in so holding because states may not renounce or modify a reciprocity agreement so as to alter any fee charged or collected as of that date. *Yellow Transportation IV, supra.*[5] The Court further held that the ICC's interpretation of the ISTEA fee-cap provision reasonably resolved any ambiguity in the statute and the interpretation therefore was entitled to deference under *Chevron USA Inc v Natural Resources Defense Council, Inc*, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984). *Yellow Transportation*

---

[5] Yellow Freight System, Inc., became Yellow Transportation, Inc., in January 2002.

*IV, supra* at 44-48. The Court reversed the decision of the Michigan Supreme Court in *Yellow Freight III* and remanded to the Michigan Supreme Court for "further proceedings not inconsistent with this opinion." *Id.* at 48.

On remand from the United States Supreme Court, the Michigan Supreme Court vacated its *Yellow Freight III* opinion and remanded to this Court for reconsideration in light of *Yellow Transportation IV*, and to reconsider other preserved arguments of the parties not directly addressed by the Michigan Supreme Court or the United States Supreme Court. 468 Mich 862 (2003). We were further directed to address the effect, if any, on this matter of certain representations made by the Solicitor General in the amicus curiae brief of the United States submitted to the United States Supreme Court in *Yellow Transportation IV. Id.*

II

In *Yellow Transportation IV, supra* at 44, the United States Supreme Court acknowledged the limited issue before the Court:

> The Michigan Supreme Court did not consider respondents' argument that the fees petitioner paid Michigan for the 1992 registration year were "collected or charged as of November 15, 1991." 49 USC § 14504(c)(2)(B)(iv)(III). Nor did that court reach the question whether Michigan had "canceled its reciprocity agreements with other States in 1989." Brief for the United States as *Amicus Curiae* 23. The only issue before this Court, therefore, is whether States may charge motor carrier registration fees in excess of those charged or collected under reciprocity agreements as of November 15, 1991.

Notwithstanding the limited nature of the Court's ruling, its reasoning and analysis in reaching its conclusion provide a solid foundation on which to analyze the penultimate issue now before us, i.e., whether the fees plaintiff paid to the state in advance for the 1992 registration year were "collected or charged as of November 15, 1991." 49 USC 11506(c)(2)(B)(iv)(III).

On remand from the Michigan Supreme Court, defendants essentially adopt Judge O'CONNELL's dissent in *Yellow Freight II* by arguing that the ISTEA fee-cap provision is unambiguous inasmuch as the $10 registration fee authorized by MCL 478.7(4) was both *charged* and *collected* as of November 15, 1991. Defendants contend that, consistent with Congress's intent, Michigan did not charge a greater fee after enactment of the SSRS, but, rather, continued to charge a $10 fee for each vehicle. Defendants further contend that, because 49 USC 11506(c)(2)(B)(iv)(III) is plain and unambiguous, the ICC's interpretation is unreasonable and not entitled to deference because it engrafted onto the statute an additional qualification that "not only must the fees be collected and charged as of November 15, 1991, but they must also be for fees for the 1991 registration year." Lastly, defendants contend that the ICC's interpretation in *American Trucking Associations, supra*, is dicta because it was not essential to the resolution of the matter noticed for comment.

Plaintiff responds by arguing that our rationale in *Yellow Freight II* remains unimpaired in light of *Yellow Transportation IV* and the longstanding principles of agency deference under *Chevron, supra*.

We agree with plaintiff that our decision in *Yellow Freight II* stands on substantially stronger ground as

a result of the United States Supreme Court's decision in *Yellow Transportation IV*. The crux of Justice O'Connor's opinion was to rule that the ISTEA's fee-cap provision was ambiguous, that the ICC had been delegated express authority by Congress "to resolve any ambiguities and fill in any holes in the statutory scheme," that the ICC's interpretation was a reasonable one, and, as such, "the Michigan Supreme Court erred in declining to enforce it." *Yellow Transportation IV, supra* at 47-48. We find this analysis to apply with equal force to the determination of Congress's intent in choosing the November 15, 1991, date to freeze fees. Defendants' arguments on remand merely rehash arguments that were made on initial appeal—arguments that were soundly rejected by a majority of this panel in *Yellow Freight II*.

Accordingly, in light of Justice O'Connor's opinion in *Yellow Transportation IV*, our analysis of the present issue on initial appeal was entirely correct and we restate and reaffirm it today, *Yellow Freight II, supra* at 199-201:

> The state argues the Court of Claims erred in determining that the state could not charge plaintiff $10 a vehicle. According to the state, it had "charged or collected" $10 a vehicle as of November 15, 1991. Plaintiff argued, and the Court of Claims agreed, the statute was properly interpreted to refer to the fees charged or collected for the 1991 registration year. We affirm the Court of Claims' decision with regard to this issue.
>
> The Court of Claims' opinion indicates its decision was based on the ICC's decision in *American Trucking [Associations]—Petition for Declaratory Order—Single State Ins Registration*, 9 ICC2d 1184 (1993). In *American Trucking*, the ICC discussed various issues that had arisen under the SSRS. The plaintiff sought clarification from the ICC concern-

ing the statutory language. The ICC summarized the issue raised by the plaintiff in the following way:

"Yellow [Freight] raises the issue of whether the statutory language concerning the fee charged on November 15, 1991, relates to fees charged for the 1991 registration year or the 1992 registration year. (Under the 'bingo' regulations, carriers filed applications between October 1 and December 31 for stamps or identification numbers for the ensuing year.) Yellow points out that it paid a State zero fees covering 1991 operations and $10 per vehicle fees covering 1992 operations. However, Yellow paid the 1992 fees prior to November 15, 1991. It would have the Commission conclude that the focus of the statute is on the 1991 registration year and that the fee for 1992 is not germane."

The ICC resolved the matter as follows:

"Yellow has raised the issue of whether the statutory language concerning the 'fee charged or collected as of November 15, 1991[,]' relates to fees charged for the 1991 registration year or for the 1992 registration year. We think it clear that the statutory language concerns only fees charged or collected for the 1991 registration year, and we so find."

The state argues the court should not have followed *American Trucking* because it does not comport with the unambiguous language of the statute and renders the November 15, 1991, deadline a "nullity." Therefore, the state argues the decision was not entitled to the deference usually afforded an agency's interpretation of a statute that the agency is charged with enforcing.

This Court has recognized that deference should be given to the interpretation of a federal statute by the agency administering it and that following an agency's interpretation promotes uniformity in application by the states. *Gibbs v General Motors Corp*, 134 Mich App 429, 432; 351 NW2d 315 (1984). Where a statute is silent or ambiguous regarding congressional intent, a reviewing court "should defer to a federal agency's construction of the statute unless the agency's interpretation is unreasonable." *Walker v Johnson & Johnson Vision Products, Inc*, 217 Mich App 705, 713; 552 NW2d 679 (1996), citing *Chevron USA, Inc v Natural*

*Resources Defense Council, Inc*, 467 US 837, 844; 104 S Ct 2778; 81 L Ed 2d 694 (1984).

Congress' intent concerning the allowable fee levels is not clear with respect to the pertinent period for fixing the fee levels. The phrase "as of November 15, 1991" denotes a period that ends on the specified date. However, the statute is silent regarding when the period begins. One could argue a state that had charged or collected fees from a carrier in *any* year before 1991 was entitled to continue to collect the fees under the SSRS. On the other hand, one could conclude, as the ICC did, that the relevant period was the registration year that included November 15, 1991. We do not believe Congress "had an intention on the precise question at issue . . . ." *Id*. at 843, n 9. Because the statute does not reveal congressional intent, we should defer to the ICC's interpretation unless it is unreasonable. *Walker, supra.*

We conclude that the agency's interpretation of the statute was reasonable. In our opinion, the agency acted reasonably in determining the fees should be fixed at the level in effect for the 1991 registration year, regardless of whether a new basis for determining reciprocity had been announced for 1992 or whether certain carriers had paid fees for 1992 before November 15, 1991. Plaintiff's voluntary payment of fees not due and owing does not affect our analysis. [Emphasis in original.]

III

In his amicus curiae brief before the United States Supreme Court in *Yellow Transportation IV*, the Solicitor General noted that, in October 1998, following issuance of our decision in *Yellow Freight II*, which was adverse to the state's position, Michigan filed with the United States Federal Highway Administration a "Petition to Reconsider Final Administrative Decision in *American Trucking Associations— Petition for Declaratory Order—Single State Insurance Registration*, ICC 41086, issued on November

18, 1993, or in the Alternative a Request that a Rulemaking Proceeding be Instituted." See April 5, 2002, Amicus Curiae Brief of the United States, pp 23-24 (available in Lexis, 2001 US Briefs 270). The petition sought to revisit the ICC's holding in *American Trucking Associations, supra* at 1192, 1195, that the fee cap in § 11506 prohibited consideration of fees levied in advance for calendar year 1992. Yellow Freight filed a response opposing the petition. In 2000, motor-carrier safety matters, including the state's petition, were transferred from the Federal Highway Administration to the Federal Motor Carrier Safety Administration (FMCSA). See 49 USC 113(f)(1). The Solicitor General noted that, while the Michigan Supreme Court's holding in *Yellow Freight III* in 2001 had rendered moot the relief sought by the state in its petition, the United States Supreme Court's reversal of that decision "would provide the agency an opportunity to address Michigan's petition." Briefs, *supra* at 23. On remand, the Michigan Supreme Court has directed us to address the effect, if any, of the state's pending petition.

Plaintiff asserts that the FMCSA has shown no intention to act on the petition and that, in any event, the petition has no significance to these proceedings. Plaintiff notes that *American Trucking Associations* remains as the final and binding statement of the ICC and its successor agencies on the issues in the case and its holding was repeatedly cited by the United States Supreme Court in *Yellow Transportation IV, supra* at 40-44, 46-48. Moreover, plaintiff asserts that the state has never taken the position that its petition provides a basis to stay or otherwise delay appellate review of this matter. Defendants concede that the

federal agency has taken no action on the petition in the 4½ years since it was filed.

Given these circumstances, we conclude that the state's pending petition should neither delay nor affect our review.

The Solicitor General, in his *Yellow Transportation IV* amicus curiae brief further suggested that the case "may be complicated by the informality of Michigan's reciprocity policies." Briefs, *supra* at 23. Indeed, in his affidavit in support of defendants' motion for summary disposition in the Court of Claims, Thomas Lonergan, Director of the PSC's Motor Carrier Regulation Division, averred: "On August 2, 1989 Chairman William Long sent a letter to all states and provinces canceling any previous reciprocity agreements." Thereafter, however, according to Lonergan, "[t]he Public Service Commission made a policy decision not to charge a fee to carriers with vehicles registered in states or provinces which did not charge Michigan-based carriers a fee." The Solicitor General noted that the legal significance, if any, of these facts had not been considered by the Michigan courts. In its remand order, the Michigan Supreme Court has directed us to address the issue.

Plaintiff contends that the reason this issue has not been considered is that defendants have never raised it as a defense to plaintiff's claim for relief, and, as such, the issue is unpreserved for appellate review. In any event, plaintiff contends that the state's actions comported with Michigan law and that there is no factual support for the Solicitor General's suggestion that the PSC's fee waivers were not based on reciprocal waivers by other states in all instances. Defendants agree that Michigan's reciprocity policy after

1989, albeit unwritten and informal, comported with Michigan law inasmuch as there was no statutory requirement that such policies be in writing. See MCL 478.7(4).

Under the circumstances, where Michigan law does not mandate that the PSC's reciprocity policies be in writing, and where neither party disputes the effect of such informal policies, we conclude that the issue is without effect on our primary holding regarding permissible fees under the ISTEA.

Other than calculation of refunds due plaintiff, neither party has identified any remaining issues to be resolved on remand.

IV

The judgment of the Court of Claims that awarded plaintiff a refund of fees for 1994, 1995, and 1996 in the amount of $99,580, plus interest, is affirmed. We further remand this matter to the Court of Claims for calculation of any refunds due for years 1997 and beyond in accordance with the court-approved stipulation and order dated April 17, 1996.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

JANSEN, J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent. On remand, the primary issue in the present case is to determine if the statutory phrase, "collected or charged as of November 15, 1991," is ambiguous. As I stated in my dissent in the previous appeal of this case, I would hold that the phrase is unambiguous.

See *Yellow Freight Sys, Inc v Michigan*, 231 Mich App 194, 209-212; 585 NW2d 762 (1998) (O'Connell, J., concurring in part and dissenting in part) (*Yellow Freight II*). On remand, I continue to be of the opinion that the phrase is unambiguous. See *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001) ("If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written.").

Nothing in the Michigan Supreme Court's opinion, 468 Mich 862 (2003) (*Yellow Freight III*), or the United States Supreme Court's opinion in this matter, *Yellow Transportation, Inc v Michigan*, 537 US 36; 123 S Ct 371; 154 L Ed 2d 377 (2002) (*Yellow Transportation IV*), persuades me that my original position was incorrect. I note that Justice O'Connor specifically stated in *Yellow Transportation IV*, *supra* at 44, that neither the Michigan Supreme Court nor the United States Supreme Court addressed the issue raised by my previous dissent. Justice O'Connor stated:

> The Michigan Supreme Court did not consider respondents' argument that the fees petitioner paid Michigan for the 1992 registration year were "collected or charged as of November 15, 1991." 49 USC § 14504(c)(2)(B)(iv)(III). . . . The only issue before this Court, therefore, is whether States may charge motor carrier registration fees in excess of those charged or collected under reciprocity agreements as of November 15, 1991.

Because neither the United States Supreme Court opinion nor the Michigan Supreme Court opinion addressed the issue raised by my previous dissent, my previous dissent remains unaffected by these subse-

quent decisions. In fact, I am slightly encouraged by the Michigan Supreme Court's statement in *Yellow Freight III* that the Interstate Commerce Commission's (ICC) interpretation of the Intermodal Surface Transportation Efficiency Act (ISTEA), PL 102-204, was contrary to the plain language of the statute, and, consequently, unworthy of deference. *Yellow Freight III, supra* at 29-31. Indeed, if the ICC interpretation of the ISTEA is contrary to the plain language of the statute and if it is unworthy of deference, then the majority's affirmance of the ICC's interpretation of the unambiguous ISTEA is erroneous. See *Wickens, supra.*

In my previous dissent, I determined that the phrase "collected or charged as of November 15, 1991" is unambiguous. If I could conclude that this phrase is ambiguous, and if I was not cognizant of the Michigan Supreme Court's edict in *Yellow Freight III* cited above, I might consider approving the majority opinion. However, because the phrase is obviously clear on its face, I reaffirm and republish my previous dissent:

> I respectfully dissent from part II of the majority opinion. I find no ambiguity in the statutory provision in dispute and accordingly would instruct the Court of Claims to apply the statutory language according to its plain meaning and not according to the ICC's strained construction.
>
> The primary goal of statutory interpretation is to ascertain and give effect to legislative purpose. *Haworth, Inc v Wickes Mfg Co*, 210 Mich App 222, 227; 532 NW2d 903 (1995). The language of the statute itself is the primary indicator of legislative intent. *Folands Jewelry Brokers, Inc v City of Warren*, 210 Mich App 304, 307; 532 NW2d 920 (1995). "If the plain and ordinary meaning of the statute is clear, judicial construction is normally neither necessary nor permitted." *Dep't of Transportation v Thrasher*, 196

Mich App 320, 323; 493 NW2d 457 (1992), aff'd 446 Mich 61; 521 NW2d 214 (1994).

The pertinent language in [former] 49 USC 11506(c)(2)(B)(iv)(III) provides for establishment of a fee system that "will result in a fee for each participating State that is equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991." The majority reasons that this language calls for identifying a "pertinent period" ending November 15, 1991, but that it reveals no congressional intent concerning when this period begins. The majority then resolves this supposed ambiguity by concluding that the provision refers to fees charged for the registration year that includes November 15, 1991. However, this construction disregards the word "collected," and broadens the specific reference, "as of November 15, 1991," to indicate the whole registration year that happens to include November 15, 1991. This distortion of the plain wording of the statute is unnecessary and inappropriate. Legislative intent "is to be found in the terms and arrangement of the statute without straining or refinement, and the expressions used are to be taken in their natural and ordinary sense." *Gross v General Motors Corp*, 448 Mich 147, 160; 528 NW2d 707 (1995). The ambiguity that the majority finds is the result of the majority's failure to accept the statutory wording at face value. When a statute is clear on its face, judicial construction is unnecessary and inappropriate. *Thrasher, supra.*

As the majority states, it was the intent of Congress to "freeze fees at the level as of November 15, 1991." To determine the particulars of that intent, I would restore "collected" as the companion of "charged," and respect the specificity of "November 15, 1991." A court should presume that every word has some meaning and avoid rendering any word nugatory. *Tiger Stadium Fan Club, Inc v Governor*, 217 Mich App 439, 457; 553 NW2d 7 (1996). Accordingly, I would read "fee . . . that such State collected or charged as of November 15, 1991" as fixing fee levels by reference to what the state charged on, or had actually collected by, November 15, 1991.

The statute does not refer to a "period" ending on November 15, but simply to that specific date. It does not refer only to the fee structure in place at the specified time, but to fees "collected or charged" at that time, identifying fees payable to the state, or already paid to the state (for whatever the reason), as establishing the level at which the fees are to be frozen. The words "as of" in reference to a specific date clearly refer to the status quo in place on that date. Thus, the congressional intent to freeze fees at the rates "collected or charged as of November 15, 1991" plainly recognizes for this purpose both the rates actually charged and those according to which fees were actually collected on that date.

Accordingly, because the state had collected plaintiff's fees as envisioned for the 1992 registration year "as of November 15, 1991," 49 USC 11506(c)(2)(B)(iv)(III), by its plain terms, allows the state to continue to assess plaintiff's fees according to the new scheme under which plaintiff had tendered payment by November 15, 1991.

At stake here is the state's interest in collecting higher fees from plaintiff in accordance with recent changes in the state's regulatory scheme, and plaintiff's interest in avoiding those fee increases and continuing to operate under the old scheme. Each party argues that the other stands to receive a windfall if the other's interpretation of the statutory language at issue is adopted. That statutes have the effect, intentionally or not, of benefiting some and burdening others is not a matter of dispute, and the Intermodal Surface Transportation Efficiency Act is no exception. Under any interpretation of 49 USC 11506(c)(2)(B)(iv)(III), someone will win and someone will lose. Although the state's reading of the statute to cause plaintiff to have to continue to pay much higher fees simply because plaintiff chose to pay 1992 fees before November 15, 1991, may seem a harsh result, the result is equally harsh if the state is obliged to forgo receiving the higher revenues to which its own laws entitle it simply because the federal statute articulated a date of late 1991 instead of early 1992. For these reasons, I would avoid any concern for who benefits, or who gets bur-

dened, from 49 USC 11506(c)(2)(B)(iv)(III) and simply give effect to its plain language.

Although I express no disagreement with the reasoning of part V of the majority opinion, I do not join in that part because it concerns the relief to which plaintiff is entitled, where under my reading of the statute in question plaintiff is not entitled to any relief. I concur with parts III, IV, and VI. [*Yellow Freight II, supra* at 209-212.]